ARTHUR M. BURNHAM *vs.* GEORGE W. HESELTON.

Kennebec. Opinion March 15, 1890.

*Client and attorney. Purchase. Presumption. Burden of proof.*
*R. S., c. 122, § 12.*

The law deprecates the purchase by an attorney of the subject matter of litigation, or any speculative bargain in relation thereto; and casts upon the attorney the burden of proving the perfect fairness, adequacy and equity of the transaction.

Such proof, like that of any other affirmative proposition, must be by evidence.

The presumption of innocence, or the improbability of wrong-doing by the attorney is not affirmative evidence; and the jury should not be instructed that they may consider such presumptions as tending to discharge the burden of proof.

The presumption is that the transaction was invalid, which presumption must be overcome by evidence.

ON EXCEPTIONS from the superior court.

This was an action of assumpsit to recover from the defendant, a counselor and attorney, money which he had collected on a promissory note and which appeared, at one time, to belong to the plaintiff. It had been left with the defendant for collection. On May 26, 1888, the parties made the following agreement:— "Said Heselton agrees for consideration hereafter mentioned to endeavor to collect a note due said Burnham from the Burnham Shutter Worker Co., of Brockton, Mass., to pay all expenses incurred in collecting and to pay said Burnham seventy-five dollars if that sum is collected. Said Burnham in consideration of the

above agrees to allow said Heselton all. moneys above seventy-five dollars for collection." The original paper, said to be obscure in certain places on account of the writing being illegible, did not come into the reporter's hands ; and it would seem that the closing words "for collection" should read "if collected."

On July 4, 1888, the parties having settled, the plaintiff gave the defendant a receipt in full as follows :—

"Recd. full payment of Geo. W. Heselton for note from Burnham Shutter Works Co., according to agreement."

The case was tried to a jury, in the superior court for Kennebec county, and they returned a verdict for the defendant.

The plaintiff excepted to some of the instructions of the presiding justice to the jury. These instructions will be found in the opinion of the court.

The plaintiff also requested that the jury be instructed that "the written agreement between plaintiff and defendant for the collection of the note on terms is unlawful and void." To this request the presiding justice replied, "That, I suppose, has reference to the statute, relative to which I have already given the rule, and which I do not modify, for the reason that the statute does not apply to this case." The plaintiff excepted to the refusal to give this instruction.

*W. Gilbert, W. C. Fletcher*, with him, for plaintiff.

To the burden of proof and dealings between client and attorney, counsel cited: *Dunn* v. *Record*, 63 Maine, 17; Story's Eq. §§ 308, 481, 1049 ; Willard's Eq. 172; Wait's Actions and Defenses, vol. 7, p. 72, § 2, and cases cited: *Harper* v. *Perry*, 28 Iowa, 57, and cases cited in Pom. Eq. § 960; *Low* v. *Hutchinson*, 37 Maine, 196.

Agreement not valid. R. S., c. 122, § 12. It promises to pay all expenses ; to pay $75, if so much is collected. These two promises are within the prohibition of the statute, forming "liabilities .to pay something." It is a promise to collect on shares.

*Heath and Tuell*, for defendant.

There being no request for instruction that the agreement is

void at common law, exceptions do not lie. There was a waiver of the point. *Robinson* v. *Edwards*, 70 Maine, 158; *Harpswell* v. *Phipsburg*, 29 Id. 313; *State* v. *Knight*, 43 Id. 11; *Bird* v. *Bird*, 40 Id. 398; *Tenney* v. *Butler*, 32 Id. 269. Request not good as a whole. *Larrabee* v. *Sewall*, 66 Id. 376. The agreement is for a sale, and not to bring, prosecute or defend any suit at law, etc., "upon shares." Case so treated throughout the trial, and jury so instructed without exception. Collecting a note "on terms" violates no statute forbidding suits "upon shares."

Statute does not apply. Defendant's agreement was simply an "endeavor to collect," and not to bring suit. He did not bind himself to bring an action. The words "upon shares" means at the halves (*Winsor* v. *Cutts*, 7 Maine, 263; *Sims* v. *Howard*, 40 Id. 276; *Bonzey* v. *Hodgkins*, 55 Id. 98; *Manter* v. *Holmes*, 10 Met. 402;) but Burnham was to receive the first $75, if collected. An agreement to charge a bill measured by the amount recovered is not illegal. *Blaisdell* v. *Ahern*, 144 Mass. 393. Contract being executed, statute cannot be invoked. *Miller* v. *Larsom*, 19 Wis. 466.

To adjudge a contract illegal, it must be clearly so; all doubts will be resolved in favor of its legality. Statutes of a penal character always to be strictly construed. *Butler* v. *Ricker*, 6 Maine, 298; *Perley* v. *Jewell*, 26 Maine, 101; *Abbott* v. *Wood*, 22 Maine, 541.

The contract will bear a construction that is legal, (a sale) and the plaintiff now contends that it can be construed as illegal. If it will bear a legal construction, the universal rule is to adopt the construction which will render it legal. See *Souhegan Bk.* v. *Wallace*, 61 N. H. 24; *Hamden* v. *Merwin*, 54 Conn. 418.

The plaintiff is not aggrieved, if this court applies this rule, and construes the agreement as a sale; in so doing it adopts the plaintiff's construction, in his opening and during the trial.

Agreement, if a sale, not within the statute. *Thompson* v. *Ide*, 6 R. I., p. 218; *Taylor* v. *Gilman*, 58 N. H. 418; *Fowler* v. *Callan*, 102 N. Y. 395.

We assumed, at the trial, the burden of proof resting on the defendant to establish the fairness of the transaction, and over-

whelmingly established the fact.    Its honesty has been established by the jury.

EMERY, J.    The plaintiff held a note of $250 against the Burnham Shutter Worker Company, which on the 23d day of March 1888, he committed to the defendant, an attorney at law, for collection.    The defendant ascertained that one Stone had for a consideration assumed and agreed to pay all the company's debts, and that Stone was amply able financially, and entirely willing to pay this note on presentation.    After ascertaining these facts, the defendant, on the 26th day of May 1888, made an agreement in writing with the plaintiff, by which the defendant was to collect what he could of the note at his own expense, and pay the plaintiff $75, if so much was collected, and retain for his services and risks all he should collect over $75.    A short time after this agreement, the defendant caused the note to be presented through a bank to Stone, who paid it in full with interest, to the bank for the defendant.    July 4, 1888, the defendant paid the plaintiff $75 and took his receipt in full "for the note according to agreement."    The next fall, November 20, 1888, the plaintiff brought this action of assumpsit for money collected and money had and received by the defendant to his use.    The object was to recover the balance of the money collected on this note by the defendant.    The defendant pleaded the general issue only, and at the trial, put the above agreement and receipt in evidence, in defense.    The plaintiff contended these were not valid against him, on the ground that he was not informed of the facts known to the defendant, in relation to the note, and the chances of its speedy and full collection.    Whether the plaintiff was so informed of those facts, was the real issue before the jury.

The presiding justice instructed the jury, in the first instance, that the burden was on the defendant, to establish the affirmative of the proposition, that the plaintiff made the agreement, or sale, with full knowledge of all the facts known to the defendant, his attorney, and without concealment or suppression on the defendant's part.    But in the same connection, he used this further language :  "But, gentlemen, while the burden is upon the de-

fendant to do this, there is another principle which it is always the right and duty of the jury to consider in determining the question of burden of proof, and that is the question of presumption; that is, the probability or improbability involved in the charge of fraud. * * * In other words, there is in these cases you will perceive, whether in civil or criminal procedure, where a fraud is charged, where something wrong is charged, an opposing presumption, an improbability, which you have a right to consider in determining when the burden of proof has been discharged. * * * * * You have a right to consider the element of the presumption of innocence, and the element of improbability, that is involved, if it is involved in your judgment. It is for you to say when the burden of proof is discharged." Again, in commenting on the credibility and bearing of the several testimonies, the presiding justice, after reminding the jury of the legal presumption of the innocence of the defendant, further said, "Gentlemen, I do not think it necessary to remind you that the time has not yet come, when a fair and honorable character, which has been built up in the county by the process of years of worthy endeavor and honorable dealing, shall not count for something in a court of justice as well as out of it."

There was no evidence in the case touching the general character of the defendant, nor anything relating to his character at all, except the relations of the witnesses on the one side and the other, touching the transactions of the defendant in these premises. To the language above quoted, the plaintiff excepted, the verdict being for the defendant.

The law hates fraud or deception of any kind. It will uphold no contract or seeming right, obtained through fraud. When the parties to the contract are upon equal footing, each dealing for himself, without any relation of trust or confidence between them, the law will not permit any misleading, any deception of one party by the other. It will not enforce any advantage so gained. But in such cases the law will not presume there was fraud. It will assume that each party acted for himself, upon his own judgment without being misled by the other party, until such

misleading is proved.   Any such party, seeking to avoid any contract or other transaction on the ground of fraud, has the burden of proving the fraud.   Such transactions are presumed to be valid, until proved to be invalid.

When, however, the parties are not upon an equal footing, each acting for himself, but some relation of trust or confidence exists between them, touching the subject matter of the contract, the law is not so considerate or trustful.   Where such relations exist, it views the transaction with caution, if not with suspicion.   In such cases, it will not assume in favor of the agent, or fiduciary, that the contract was fairly made, and that there was no abuse of confidence.   It waits for such party to satisfy it affirmatively, —to affirmatively show that there was in fact no abuse of confidence,—that the contract was in fact fairly made,—that the other party was in truth made acquainted with all the material facts and reasons known to the fiduciary.   The very making of the contract is incongruous,—*prima facie* inconsistent, with the fiduciary relation.   The transaction may be valid, but there is no presumption in its favor.   The presumption is of invalidity, which can only be overcome, if at all, by clear evidence of good faith, full knowledge, and of independent consent and action. Pom. Eq. Jur. § 945, 956, 957, Adam's Eq. § 61, and notes; Story Eq. Jur. § 310.

Especially does the law require the highest degree of honor and good faith, from its own ministers.   It insists that the confidence of the suitor in the faithfulness and disinterestedness of his attorney and counsellor, shall be fully deserved.   It deprecates any purchase of any matter of litigation by an attorney from his client.   It greatly desires that the attorney should be satisfied with a reasonable compensation, without seeking to obtain speculative bargains from his client.   As said by one writer, such a transaction may be valid but it is presumptively invalid.   ·Where any such bargain is made, the burden of sustaining it is on the attorney. No presumption will avail him.   He cannot get behind the presumption of innocence, and await the coming of hostile evidence. He must be aggressive, and advance against the presumption of invalidity, and overcome it, if he can, by evidence of "the perfect

fairness, adequacy, and equity of the transaction," and particularly must he show that his client was informed of all material facts known to himself. *Dunn* v. *Record*, 63 Maine, 17 ; *Arden* v. *Patterson*, 5 Johns, Ch. 44 ; *Rogers* v. *Marshall*, 3 McCrary, 76, 4 Kent's Com. notes to, § 449. Weeks on Attorneys at Law, § 268, and notes. It has even been held by high authority, that such transactions are conclusively invalid,—that the presumption of invalidity cannot be overcome. *Newman* v. *Paine*, 3 Ves. 203; *Wallis* v. *Loubat*, 2 Denio, 607 ; Wayne, J., in *Michoud* v. *Girod*, 4 How. p. 555.

Recurring now to the language of the instructions to the jury, and reading them as a whole, in the light of the principles above stated, it will be seen, we think, that the presiding justice gave the jury to understand that the presumably good character of the attorney,—the presumption of innocence,—the improbability of fraud, —might in themselves be evidence and perhaps sufficient evidence to sustain the attorney's burden of proof, and hence establish the validity of the transaction in question. The whole charge is made a part of the bill of exceptions, and it intensifies rather than lessens the force of the language excepted to. The jury would naturally receive the impression, from the language quoted and from the whole charge, that the attorney was protected by the presumption of innocence and the presumption of improbability, which presumptions were to be regarded as greatly strengthened by the general good character of the attorney. The jury also might understand that they could, if they would, regard these presumptions as wholly sustaining, or at least balancing the burden of proof, and as relieving the attorney of any further duty of showing that the transaction was fair, adequate and equitable.

We do not think the attorney had any such presumptions in his favor in this action. He was not on trial for any crime. He was not charged in the declaration with any fraud. The action was the equitable one of assumpsit for money had and received by him to his client's use. In defense, he set up a transaction with his client which the law does not favor, and holds to be *prima facie* invalid. It was the law, not the plaintiff, that charged the fraud. The character of this particular transaction, not that of the attorney, was in issue. The act, not the person,

was then on trial. The character of the attorney might aid him as a witness, but it could not prove his case for him as a party. While one may invoke the presumption of innocence in negation, and wait for the prosecution to overcome it by evidence, he can not successfully invoke it in affirmation, as tending to prove any proposition cast upon him to prove. That presumption is a shield, not a weapon. To illustrate:—it is wrong not to pay one's promissory notes, and yet when one is sued upon such a note, and the note is produced, he cannot rely upon the presumption of his innocence of wrong, as proving or tending to prove payment of the note.

As to the presumption of improbability,—the law says it is against the attorney,—that it is improbable that the client had the same knowledge, and stood on the same footing as the attorney. Hence the requirement that the attorney shall affirmatively prove these propositions. In this case, however, the jury were in effect told, that the presumption of improbability supported the attorney,—that it was improbable that the transaction was invalid. If that were so,—if it were improbable that the transaction was invalid,—then of course it was probably valid, and must have been held valid until proved otherwise, and there was no burden on the defendant to establish its validity. There was, however, clearly no improbability that the bargain in this case (by which the client, the owner of the note, got only $75, and the attorney got $187 out of it,) was unequal and inequitable.

It must be evident that the instructions excepted to deprived of all force and virility the correct and wholesome rule that was first laid down. Their effect was to relieve the attorney of a burden which the law plainly says he must bear, if he will make such contract. It may be that this contract, while *prima facie* invalid, was in truth, "perfectly fair, adequate and equitable." We hope it was. But the attorney must prove it so; and as he would prove any other affirmative proposition, by evidence, and not by invoking presumptions of his innocence, and of the improbability of his doing wrong.

*Exceptions sustained.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.