## In re JONES.

### No. 1513 (81 Pac. 162.)

ATTORNEY AND CLIENT—PENDING LITIGATION—CHAMPERTOUS CONTRACT —DISBARMENT.—Where an attorney, pending a suit to foreclose a mortgage, after twice refusing to purchase the pending litigation from his client and hold him harmless from further liability, and after acquiring knowledge that his client's accrued costs and the amount involved in the suit were equal to the value of the property involved entered into such contract with his client, intending to account to him therefor at the close of the litigation, and in an action to recover fees the court held that the contract was inequitable, but allowed the attorney to recover on a quantum meruit, the mere making of such contract was insufficient to warrant the attorney's disbarment for unprofessional conduct.

(Decided June 8, 1905.)

Proceedings for the disbarment of Ricey Jones, an attorney.

Dismissed.

*Richard W. Young, Chas. Baldwin* and *J. W. N. White-cotton* for bar association.

*O. W. Powers* for accused.

### THE PROSECUTION'S POINTS.

In view of the decision of this court upon the demurrer to the accusation, it is, perhaps, unnecessary to discuss the general principles of law applicable to the case.

It was urged by the attorneys for the accused, as appears by their printed brief, that the accusation was improperly filed because the charges were made not by the accusors in their personal capacity, but as a committee of an association (i. e., the State Bar Association) having no legal entity; that the accusation, being upon information and belief, was not sufficient to put the accused upon his defense; that the second paragraph of the accusation does not state the offense of champerty, since, from aught that appears, the contract alleged amounts to nothing more than security for money loaned or to be loaned, since the accused did not contract to prosecute or defend any case, and did not undertake to pay the costs of any proposed litigation, but simply acquired the subject-matter of a law suit previously tried for the purpose of paying attorneys' fees and costs already accrued, since, further, that the accused had a lien upon the subject-matter for his services, therefore an interest therein recognized by law, and finally, because it does not appear that the accused had any greater interest in the event of success than in the event of defeat.

It was further objected that the time and place of the making of the contract are not stated and that the terms thereof are indefinite. Counsel for the defense further urged that the contract alleged was entirely lawful and not contrary to public policy under the existing statutes of this State. It was argued that the Legislature, by the enactment of section 135 of the Revised Statutes, intended entirely to abolish the law

as it had theretofore existed and had been construed by this court upon the subject of champerty; that the declaration of section 135 of the Revised Statutes, that "The compensation of an attorney and counselor for his services, is governed by agreement, express or implied, which is not restrained by law," has a very different signification from the similar provision found in section 3683 of the Compiled Laws of 1888, that "The measure and mode of compensation of attorneys and counselors at law, is left to the agreement, express or implied, of the parties;" the contention being that, under section 3683, Compiled Laws, the measure of compensation of attorneys, while left to the agreement of the parties, was controlled by such legal restraints as were imposed by statute and by the common law, whereas under the provisions of section 135, Revised Statutes, such agreements are absolutely without any legal restraint whatever, a contention, we very properly submit, repudiated by this honorable court. Our own contention was and is that the language of section 135 is in legal effect identical with the language of section 3683, both permitting the compensation of attorneys to be left to the agreement of the parties to the extent and to the extent only, that such agreements are not restrained by law. Any other construction, it seems obvious, would be immoral and absurd.

It is, moreover, to be pointed out that the right to provide for the compensation of an attorney, without legal restraint, if existing in this State, would not permit counsel to contract to bear the costs and disbursements of the suit. Section 135, Revised Statutes, refers only to the compensation of the attorney, nothing therein permitting or referring to a contract for the payment of the costs or disbursements—to hold otherwise, would be to construe the section as permitting champerty and maintenance in their grossest forms. In overruling the demurrer of the accused, the court repudiated the contention of the accused, thus virtually sustaining the doctrine of *Nielson v. Evans* (60 Pac. Rep. 557), and earlier cases therein cited.

The suggestion that the contract of May 6, 1901, referred merely to compensation for past services and the payment of

past disbursements, finds a sufficient answer in the following language of the contract itself: "And the undersigned, R. H. Jones, hereby agrees to assume any and all costs on appeal and hold the said L. H. Berg harmless therefrom in the pending case of the Western Loan and Savings Company against Berg, and, on adverse decision of said appeal, also to hold said Berg harmless from the costs of a new trial in the lower court and from any and all expense of an attorney and otherwise till the case is ended"—a plain agreement on the part of Jones, in consideration of a portion of the land sought to be foreclosed, to continue the litigation at his own cost and expense, for attorneys' fees or otherwise, during the appeal then pending in this court, during a new trial, and until the case was ended; this contract having been made, as the evidence shows, when his client Berg was tried of the suit and ready to quit, even at the sacrifice of the property in dispute.

### ACCUSED'S POINTS.

"An accusation for the removal of an attorney or counselor must be verified by the oath of some person to the effect that the charges therein contained are true. An accusation merely upon information and belief, that is not supported by the affidavit of the informant, is insufficient; nor is such an accusation sufficiently verified by stating that the same is true of affiant's own knowledge, except as to the matters therein stated on information and belief and as to those matters he believes it to be true." (*In re Hudson,* 102 Cal. 467; *In re Hotchkiss,* 58 Cal. 38.)

It is manifest that the Legislature, by the new act, intended to entirely abolish the law as it has been construed by the court upon the subject of champerty. The statute is very broad. It declares that the compensation of attorneys shall be governed by the agreement, "express or implied, with his client, which is not restrained by law." Under such a statute, the common law relating to champerty is abrogated, and under it a contract between an attorney and his client that the attorney shall pay all costs incurred on account of bringing an action in case

he fails to recover anything, is valid. (*Wildey v. Crane,* 63 Mich. 720; *Lytle v. State,* 17 Ark. 608; *Howard v. Throckmorton,* 48 Cal. 482; *Ballard v. Carr,* 48 Cal. 74; *Hoffman v. Vallejo,* 45 Cal. 564; *Mathewson v. Fitch,* 22 Cal. 86; *Hassel v. Van Houten,* 39 N. J. Eq. 105; *Brown v. Bigne,* 21 Ore. 260; *Bentinck v. Franklin,* 38 Texas. 458; See also other authorities cited in note 41, 6 Cyc. 860.)

"One who has an interest in the subject-matter of the suit is not guilty of maintenance by buying the interest of plaintiff or defendant *pendente lite,* and thereafter prosecuting or defending the suit himself." (*Thompson v. Marshall,* 36 Ala. 504, 76 Am. Dec. 331; *Blackerby v. Holton,* 5 Dana 520; *Ross v. Ft. Wayne,* 64 Fed. 1006.)

In our State, the common law doctrine of champerty and maintenance does not prevail, and it is stated in 6 Cyc. 859 that, "In States in which the common law doctrine of champerty and maintenance had not been adopted, it has been held that there is nothing contrary to law, morals or public policy in a contract by an attorney to recover land or other property for an interest in it, even though he agree to pay the costs and expenses." (*Lytle v. State,* 17 Ark. 608; *Howard v. Throckmorton,* 48 Cal. 482; *Ballard v. Crook,* 48 Cal. 74; *Hoffman v. Vallejo,* 45 Cal. 564; *Madison v. Finch,* 22 Cal. 86.)

It is said by Howell's Statutes (Mich.), section 9004: "The common law relating to champerty has been virtually repealed and under it a contract between an attorney and his client, that the attorney should pay all costs incurred on account of bringing an action, in case he failed to recover anything, has been held to be valid." (*Wildey v. Crane,* 63 Mich. 720; *Hassell v. Van Houghton,* 39 N. J. Eq. 105; *Fogarty v. Jordan,* 2 Rob. 319.)

### STATEMENT OF FACTS.

These proceedings were commenced by a committee appointed by the bar association of this State to file charges against Ricey H. Jones, a licensed attorney of this court, charging him with unprofessional conduct as an attorney, and

for which the relators ask that his license as an attorney of this court be revoked and that. he be permanently disbarred. The members of the committee, who also appeared as prosecutors, filed an accusation which contained five separate and distinct charges against defendant. A demurrer was interposed by defendant, and one of the charges was stricken out by this court. A referee was appointed to take testimony in the case, prepare findings of fact, and report the same to this court. The case is now before us upon the findings of the referee.

The relators, in their printed brief filed in this case, say: "Of the five charges contained within the accusation, the fifth (contained within paragraph 6) was stricken out by the court; the third (contained within paragraph 4) was abandoned at the hearing by reason of failure of proof; the second (contained within paragraph 3) and the fourth (contained within paragraph 5), not being clearly established by the evidence, no conviction will be asked thereon"—thereby leaving only the first charge for the consideration of this court.

The accusation is as follows: "That the said Ricey H. Jones, at the county of Box Elder, state of Utah, on or about the 6th day of May, 1901, unlawfully, and in violation of his oath and duty as an attorney and counselor, entered into a champertous contract with one L. H. Berg to continue, from a corrupt motive of passion and interest, the action then pending in the district court of the First Judicial District of the State of Utah in and for the said county of Box Elder, in which said litigation the Western Loan & Savings Company, a corporation, was plaintiff and said L. H. Berg and others were defendants, and the said contract was as follows, to wit: 'L. H. Berg agrees to deed the east one-half of the east one-half of Lot one, Block eight, Plat "C" of Brigham City and the grantee to be named by the undersigned, R. H. Jones, on the 14th day of May, 1901, or after with good and sufficient conveyance against the world; except the Western Loan and Savings Company. And the undersigned, R. H. Jones, hereby agrees to assume any and all costs on appeal and hold the said L. H. Berg harmless therefrom in the pending case of the Western Loan and Savings Company against Berg. And

on an adverse decision of said appeal also to hold said Berg harmless from the costs of a new trial in the lower court and from any and all expense of an attorney and others till the case is ended.' Which said agreement was in writing, signed by the said Ricey H. Jones and L. H. Berg, and the parcel of land described in said agreement was a part of the subject matter of the said litigation, and the said Jones was the attorney for the said Berg and others defendants in said cause."

The findings of the referee, in so far as material here, are as follows: "That on the date of the execution of said written contract the case of the Western Loan & Savings Company against L. H. Berg and others was pending on appeal in the Supreme Court of this State. That at that time the legal title of the tract of land therein described was in one Johanna Maria Thomassen, a plural wife of said Berg, which fact was then and there known to said accused, and that he believed that such legal owner would carry out the wishes of said Berg. That the land and property described in said written agreement is the same land and property involved in the foreclosure proceedings in the case of the Western Loan & Savings Company against Berg. That prior to the execution of the said written contract there had been incurred some costs for printing and other expenses in said pending case. That the accused went into possession of said land and property described in said written agreement, collected rents, made improvements, and paid taxes. That thereafter said accused notified said Berg that he had procured a purchaser for said premises, and demanded a deed to the same, and that said Berg and said Thomassen refused to execute such or any deed to said premises. That on or about October 10, 1902, said accused, Ricey H. Jones, commenced an action in the district court for Box Elder county against L. H. Berg, Johanna Maria Thomassen, and others to recover his fees, costs and disbursements incurred in the former suit of the Western Loan & Savings Company against said Berg and others; that issue was joined and trial had by the court, Hon. Charles H. Hart, Judge, presiding, who made findings of fact, conclusions of law and rendered judgment therein in

favor of the plaintiff and against the defendants Berg and Thomassen for the sum of $118.03.

"That among other findings of fact said court made the following, which are adopted by the referee and found as facts, to-wit: That about the 1st day of November, 1900, the said Ludvig H. Berg by a contract in writing retained and employed the accused Ricey H. Jones, for the purpose of procuring his note to the Western Loan & Savings Company to be canceled, and his mortgage to be released and surrendered by the said company on the following terms: The said L. H. Berg to advance the sum of $12.50 as retainer and costs, and to pay the said Ricey H. Jones, in addition thereto, the sum of $20 in dental work as agreed; and said Ricey H. Jones appeared in said cause and defended the same, and performed the legal services agreed to be performed in said district court. That on November 23, 1900, said Jones and said Berg entered into a second agreement whereby the said Berg agreed to pay the said Jones one-half of the amount said Jones should be able to reduce the claim of the Western Loan & Savings Company on the trial in the district court. That on the 5th day of December, 1900, said cause was tried and judgment duly made and entered against plaintiff therein, and for the defendant therein, for the sum of twelve dollars and twenty-six cents and costs of suit. That after the said decision and judgment in the district court the Western Loan & Savings Company filed their motion for a new trial, and, upon the overruling of the same, appealed said cause to the Supreme Court of the State of Utah. That upon the filing of said motion for a new trial said Berg employed and retained said Jones to defend him upon said motion and upon appeal of said cause in the Supreme Court. No fee was stated for said services, and the labor performed by the said Jones pursuant thereto was of a reasonable value of one hundred dollars. That the contract entered into between said Jones and said Berg on the 6th day of May, 1901, was inequitable. That pursuant to his retainer said Jones paid out and expended for necessary costs and disbursements in said action, for traveling expenses,

printing briefs, and abstracts to be used in the Supreme Court, the sum of one hundred dollars."

McCARTY, J., after the foregoing statement of the case, delivered the opinion of the court.

In addition to the facts found by the referee, the record shows that the demand of the Western Loan & Savings Company against Berg in the foreclosure suit was about $350, and that the value of the property sought to be foreclosed was about $450. When the contract under consideration was made, Berg was insolvent, and the case was pending in this court on appeal, and certain necessary expenses growing out of the appeal, and for which Berg was responsible, were due and unpaid; and, as found by the referee, the compensation of defendant for services rendered and to be rendered by him in the case on appeal had not been fixed or agreed upon. In another action, in which the validity of this same contract was involved, the trial court found, which finding was adopted by the referee, that the services thus rendered by the defendant were reasonably worth the sum of $100, and that the costs and disbursements for which Berg was liable amounted to $100. It will thus be seen that these sums, together with that sued for by plaintiff in the foreclosure proceedings, exceeded in amount the value of the property by $100, Berg's accrued costs and the amount involved in the suit being equal to the value of the property. It is therefore plain that the only means by which the accused could realize anything out of the litigation by virtue of his contract was to either entirely defeat or materially reduce the claim made against his client by the Western Loan & Savings Company. True, the record shows that, after Berg had filed his answer in the foreclosure proceedings and the issues were made up, the Western Loan & Savings Company offered to compromise for $137.50, but there is no evidence that the defendant herein, through corrupt motives or otherwise, or at all, advised his client Berg to reject the offer. And it appears from the record in this case that Berg, when he discovered that the claim of the Western Loan & Savings Company and the costs of the litigation would

exceed the value of the property involved, went to Jones, his attorney, and requested him to take the property and to save him (Berg) harmless from all costs as well as any deficiency judgment that might be rendered against him. Jones at first declined to accept the proposition thus made by Berg, but, after repeated requests on the part of Berg, Jones entered into the contract in question. Jones' testimony on this point, which is not disputed, in part is as follows: "He came into my office and wanted me to do something like it (referring to the contract). . . . He said the printers were pressing him for money, . . . and wanted to know if he couldn't utilize the lot. Q. How much did he claim the lot was worth? A. $450. . . . He wanted to know if I couldn't take the place. I said no; I told him I would rather not have anything to do with it. The third time he brought Gasberg, his friend, in with him. I told him I would arrange to sell the place, and we would use the funds in the expenses that were being incurred and account to him at the close of the litigation." On cross-examination he further testified respecting this transaction: "He [referring to Berg] came to me two or three times. I refused to have anything to do with it twice, and the third time I told him that I would sign that contract. Then he wanted my wife to sign it, and I got her to sign it afterwards. . . . I expected to account to Berg after everything was settled up." Berg was present during the investigation of the matter before the referee, but the relators did not call him to the stand to deny the testimony of Jones; therefore we must accept Jones' version of the facts and circumstances leading up to and surrounding the making of the contract as true.

The questions upon which this proceeding is based were litigated in a court having jurisdiction of the subject-matter and the parties to the action, and that court held that the contract in question was inequitable and set it aside, but it also held that Jones was entitled to recover a *quantum meruit* for his services, thereby in effect holding that Jones was not guilty of deceit, actual fraud, or of corruption in making the

contract; otherwise Jones could not have recovered upon any theory. The relators offered no evidence to prove the charge under consideration, except the written contract, the mere execution of which, they contend, was sufficient to convict the accused of unprofessional conduct. When an attorney seeks to enforce a contract of this character entered into between himself and client after their fiduciary relations have commenced a court will invariably scrutinize the transaction in the most searching manner, and unless it is made to appear affirmatively that the attorney has acted in the utmost good faith, and that the contract is in every respect equitable, and in no way detrimental to the interests of the client, will not only refuse to grant relief upon it, but will on application of the client, do as was done with the contract under consideration—rescind and set it aside. So jealously does the law guard the interests of the client in his dealings with his attorney, after the relation of attorney and client has been created, that it casts upon the attorney the burden of proving the bona fides of the transaction. In Weeks on Attorneys (2 Ed.), section 121, the author says:

"While the relation of attorney and client continues, the court will carefully scrutinize the dealings and contracts between them, and guard the client's rights against every attempt by the attorney to secure an advantage to himself at the expense of the client. Nor is it necessary in such case for the client to show actual, or, as it is sometimes called, active fraud, in order to obtain relief; but the law will presume in his favor so soon as the confidential relation is shown to have existed at the time of the transaction complained of. This rule has its foundation on principles of public policy, and is adhered to by the courts with severity." (3 Am. & Eng. Enc. Law [2 Ed.], 332, 334; 6 Cyc. 862; 1 Story, Eq. Jur., section 310; *Burnham v. Heselton,* 82 Me. 495, 20 Atl. 80, 9 L. R. A. 90; *Bingham v. Sheldon* [Sup.], 91 N. Y. Supp. 917; *Myers v. Lu-*

*zerne County* [C. C.], 124 Fed. 436; *Klein v. Borchert* [Minn.], 95 N. W. 215; *Goldberg v. Goldstein* [Sup.], 84 N. Y. Supp. 782.)

When it is shown that the contract is based upon an adequate consideration from the attorney and no advantage has been taken of the client, and nothing done which would in any result prejudicially to the client's interests, but that the entire transaction has been open and nothing withheld or concealed from him, and that he acted freely and with a full understanding of the probable consequences of his acts, such contracts, notwithstanding they are looked upon with disfavor by the courts, have been upheld. (*Bristol v. Dann et al.,* 12 Wend. 142, 27 Am. Dec. 122; *Alwood v. Mansfield et al.,* 59 Ill. 496; *Baker v. First Nat. Bank,* 77 Ia. 616, 42 N. W. 452; *Davis v. Stith* [Ky.], 11 S. W. 810; 3 Am. & Eng. Enc. Law, 337; *Lytle v. State,* 17 Ark. 608; *Bentinck v. Franklin,* 38 Tex. 458; *Hassell v. Van Houten,* 39 N. J. Eq. 105.) While the law implies constructive fraud on the part of the attorney in such cases, and places upon him the burden of proving the good faith of the transaction on his part, we do not understand that the presumption is ever carried to the extent of holding that the attorney is guilty of actual fraud, deceit, and unprofessional conduct because of the mere making of such a contract. Because a contract of this kind may be inequitable or against public policy, it does not necessarily follow that the attorney making it must be deemed guilty of gross unprofessional conduct. And before a court will proceed to punish summarily an attorney for a breach of unprofessional duty of the character here complained of, it must first be shown, by evidence other than the mere making of the contract, that the attorney acted dishonestly and with corrupt motives, and has willfully misled and taken an unfair advantage of his client. In *Barker's Case,* 49 N. H. 195, the accused, who was an attorney at law, was proceeded against for alleged unprofessional conduct, and the court, in the course of the opinion, tersely, and, as we think correctly states the doctrine as follows:

"The true doctrine is expressed in Bacon's Abr. Attorney, H, thus: Attorneys are officers of court, and liable to be punished in a summary way, either by attachment, or by having their names stricken out of the roll of attorneys, for any ill practice attended with fraud and corruption, and committed against the obvious rule of justice and common honesty; but the court will not easily be prevailed on to proceed in this manner, if it appears that the matter complained of was rather owing to neglect or accident than design, or if the party injured has other remedy provided by act of parliament or action at law; and this doctrine is recognized in *Bryant's Case*, 24 N. H. 149. Tested by these rules, we think the court is not called upon to exercise its summary power in this case, for we think it is not clearly shown that fraud was practiced by the attorney to obtain payment of this bill."

Farther on, in the same opinion, the court observes:

"The court is fully impressed with the importance of its interposition to check any fraudulent or corrupt practice by an officer of the court, and a member of a profession so highly honored and trusted, and which exercises such a vast influence in the affairs of men; but at the same time we feel that, in view of the very grave effects of exerting this power upon the professional standing and character of the person who may be subject to it, it ought to be exercised with great caution, and only when the court is fully satisfied that the fraudulent or corrupt conduct is proved. Such proof, we think, is not furnished in this case, and therefore the complaint must be dismissed."

While we recognize, as hereinbefore stated, the general doctrine which holds that an attorney cannot make a valid purchase of pending litigation from his client, yet we do not feel that the contract under consideration was so obnoxious and

so against public policy that the making of it, under the circumstances, was such a breach of professional duty on the part of defendant as would warrant this court in imposing a penalty therefor.

The proceedings are therefore dismissed.

BARTCH, C. J., and RITCHIE, District Judge, concur.