STUBINGER v. FREY.

Because of a wise public policy which carefully guards the relation of attorney and client, and seeks to secure the absolute fidelity of the former to the latter, a purchase by an attorney at law, from a client or her agent, of a judgment or execution belonging to the client in the hands of the attorney for collection, is presumptively invalid ; and the attorney making such purchase, in order to sustain the same, must prove clearly, the burden being upon him, the perfect fairness, adequacy as to consideration, and equity of the purchase. The evidence in this case not meeting this requirement, the judgment of the court below overruling the motion for a new trial made by the client must be reversed.

Argued October 8,—Decided October 29, 1902.

Complaint. Before Judge Gober. Cobb superior court. April 7, 1902.

*Sessions & Moss*, for plaintiff in error.
*Mozley & Weaver*, contra.

ADAMS, J.  The defendant in error obtained a verdict and judgment against the plaintiff in error on two notes executed by the plaintiff in error on April 16, 1901, involved in two separate suits which, by a consent order, were consolidated.  A motion for a new trial was made upon the general grounds, and a bill of exceptions has been filed to the overruling of this motion.  The undisputed evidence shows that a judgment was obtained by C. H. Stubinger, agent for Mrs. S. T. Stubinger (the latter being the present plaintiff in error), through a firm of attorneys of which the defendant in error was a member, on which execution issued on the 30th day of December, 1899, for the principal sum of $198.16, with interest from November 1, 1897, and costs.  While this execution was in the hands of the defendant in error as an attorney at law, he, according to his evidence, purchased the judgment and execution from C. H. Stubinger as the agent of Mrs. S. T. Stubinger, under a contract of purchase dated January 13, 1900, which recites that the judgment and execution are transferred to the defendant in error for the sum of $25 to be paid cash, and for the further sum of $75 to be paid if collected, and further, that "it is expressly understood that if there is nothing collected on said fi. fa., that there is not anything more to be paid to the said C. H. Stubinger, agent for Mrs. S. T. Stubinger."  The testimony for the plaintiff in error was to the effect that when she gave the two notes sued on (given

because of taxes paid and money advanced for her by the defendant in error), she did not know that her judgment had been collected in whole or in part, but was informed by the defendant in error that he had not collected any money on the judgment, and the reason stated in the evidence was given her why it would take some time to do so. In this she was corroborated by her two sons. It was proved by the receipt of the defendant in error and his own evidence that on the 19th of September, 1900, he received from the defendant in fi. fa. $203.06, in full settlement of the judgment. The plaintiff in error pleaded this collection as a set-off against her two notes, and asked for a judgment against the defendant in error allowing this set-off.

Assuming, as we do, that the verdict of the jury resolved the conflict in the evidence in favor of the defendant in error, the principle laid down in the headnote is announced in the light of his evidence. His testimony is to the effect that he bought the fi. fa. because C. H. Stubinger, the agent of the plaintiff in error, came to him and stated that a suit had been brought against him and that an effort would be made to show that the fi. fa. was his property, in order to subject it to his debts, that he and his mother's family (this plaintiff in error is the mother of C. H. Stubinger) were without anything to eat, and that he wanted to sell the fi. fa. in order to get money to live on ; and thereupon the agreement heretofore noticed was made, under which the defendant in error paid cash $25 on the day of the purchase; that he later on indorsed a note of C. H. Stubinger for another $25, which he paid; and that he subsequently paid the other $50. The dates of the indorsement of the note and the payment of the $50 are not given, but we assume, in view of the terms of the contract, that these amounts were paid after the collection of the fi. fa. The defendant in error further testified that he did not ask Stubinger to transfer this fi. fa. for the purpose of hindering and delaying his creditors from collecting their debts, but, on the contrary, bought the fi. fa. "straight out," and paid him the amount he agreed to take for it. He denied in general terms the conversation testified to by the plaintiff in error. The defendant in error concluded his testimony as follows: "Frey & Frey represented C. H. Stubinger against Mrs. Jane Shumway," who was the defendant in fi. fa., "in the management of said case. Said C. H. Stubinger claimed to be agent for his mother, Mrs. S. T. Stu-

binger.    In the sale of the fi. fa. to me he acted as agent for his mother, Mrs. S. T. Stubinger, and she knew all about it at the time we settled, and she gave me the two notes now sued on." This shows that the defendant in error understood that he was representing the mother, and that the subject-matter of the purchase was her property.    The evidence of the plaintiff in error and of her sons, if accepted by the jury, would have required a verdict in her favor on the set-off, without regard to the relation between the parties and the principle stated in the headnote.    According to this evidence, there was no intention on the part of the son to sell the judgment, and he received no consideration therefor; and if he did undertake to sell and to receive the consideration, it was without the knowledge of his principal or her subsequent ratification. As already stated, however, we assume that the verdict recognized the correctness of the version of the matter given by the defendant in error himself.    There was nothing in his evidence to suggest that the judgment was not collectible, or that the solvency or responsibility of the defendant in fi. fa. was at all doubtful, or that there was any reason for its sacrifice upon what seems to be a grossly inadequate consideration.

The doctrine covered by the headnote is sound, wholesome, and well established.    It can not be too emphatically stressed, or too completely heeded.    The dignity and real worth of what is, when properly regarded, a learned and honorable profession, as well as the best interests of society and the demands of good faith, conduce to the importance and value of the principle.    Judge Story, in his work on Equity Jurisprudence, vol. 1, § 310, has well said, on this general subject : " It is obvious that this relation " (that of client and attorney) " must give rise to great confidence between the parties, and to very strong influences over the actions and rights and interests of the client.    The situation of an attorney or solicitor puts it in his power to avail himself not only of the necessities of his client, but of his good nature, liberality, and credulity to obtain undue advantages, bargains, and gratuities.    Hence the law, with a wise providence, not only watches over all the transactions of parties in this predicament, but it often interposes to declare transactions void which between other persons would be held unobjectionable.    It does not so much consider the bearing or hardship of its doctrine upon particular cases, as it does the importance

of preventing a general public mischief which may be brought about by means, secret and inaccessible to judicial scrutiny, from the dangerous influences arising from the confidential relation of the parties.    By establishing the principle that while the relation of client and attorney subsists in its full vigor the latter shall derive no benefit to himself from the contracts, or bounty, or other negotiations of the former, it supersedes the necessity of any inquiry into the particular means, extent, and exertion of influence in a given case; a task often difficult, and ill-supported by evidence which can be drawn from any satisfactory sources.    This doctrine is not necessarily limited to cases where the contract or other transaction respects the rights or property in controversy, in the particular suit in respect to which the attorney or solicitor is advising or acting for his client; but it may extend to other contracts and transactions disconnected therefrom, or at least where from the attendant circumstances there is reason to presume that the attorney and solicitor possessed some marked influence, ascendancy, or other advantage over his client in respect to them.    On the one hand, it is not necessary to establish that there has been fraud or imposition upon the client; and on the other hand it is not necessarily void throughout, ipso facto.    But the burthen of establishing its perfect fairness, adequacy, and equity is thrown upon the attorney, upon the general rule that he who bargains in a matter of advantage with a person placing a confidence in him is bound to show that a reasonable use has been made of that confidence; a rule applying equally to all persons standing in confidential relations with each other."

We entirely approve the following statement of this important principle, made by Bispham in his work on the Principles of Equity, § 236 :  "Indeed, even in cases of contract, where the property is the subject-matter of the litigation in which the attorney is acting, it is with great difficulty that the purchase can, under any circumstances, be sustained.    The utmost good faith (*uberrima fides*) is required on the part of the legal adviser; and the general rule of public policy, which discountenances transactions between persons who are situated in a confidential relation towards each other, applies with particular force to attorneys-at-law, who are officers of the court, and are; on that ground, as well as on account of the powerful influence which they exercise over the minds of their clients,

restrained from dealing with those whose interests they have in charge." See, in this connection, *Larcy* v. *Baker*, 86 *Ga.* 468 ; 2 Pom. Eq. Jur. § 960; Weeks on Attorneys at Law, § 273 et seq. There are authorities which sustain the proposition that such a purchase, though made without fraud or undue advantage and upon the payment of an adequate price, is nevertheless voidable at the option of the client. See, for example, Lane *v.* Black, 21 W. Va. 618 ; Newcomb *v.* Brooks, 16 Ibid. 59, and cases cited. In the case of *Cox* v. *Sullivan*, 7 *Ga.* 144, where an attorney had obtained in his own name a judgment against his debtor, and who represented also a claim for his client against the same debtor, the court held that he was not necessarily bound to apply the money realized to the payment of his client's claim, under the showing made by the attorney. The court nevertheless, recognized the general principle involved in the quotations above made when, through Nisbet, J., it used the following language concerning attorneys at law : "He is bound to the *highest honor and integrity*, to the *utmost* good faith. As a general rule, he will not be permitted to pursue his own interests when they conflict with those of his client. By assuming the trust to collect, he pledges himself to protect his interest against all others, even his own. . . It is the interest of the community, and also of a profession distinguished for its liberal views, its lofty honor, and its great social and moral influence, that the liability of its members, upon the score of good faith, should be subject to an exceedingly stringent rule."

Under the principle announced in the Civil Code, § 2695, par. 2, a purchase by an attorney under the facts disclosed by the evidence in this case would seem to be void as against a client's creditors. Ordinarily, the principle embodied in the legal maxim "in pari delicto," etc., would deny relief to either party, but this principle does not operate so as to prevent recovery by a client. 4 Cyc. 962; Place *v.* Hayward (N. Y. C. Ap.), 23 N. E. 25. This exception to a general rule is mentioned for the purpose of illustrating the great care of the law to protect a client dealing with his attorney at law. We do not overlook the fact that in this case the creditors referred to by the agent were his, and not his principal's.

In the case at bar, after proof of the collection of the judgment by the defendant in error, the burden was put upon him to prove clearly that the purchase was valid notwithstanding the relation

between himself and his client, and it was the duty of the court and jury to closely scrutinize the transaction, and to see to it that this burden was fully carried. We need not add that this burden would not be met unless the attorney showed clearly a full knowledge of the transaction on the part of his real client, this plaintiff in error, complete adequacy of consideration, and particularly that he was not speculating in any way upon her necessities. Without meaning to say that the attorney in this case has been consciously or wittingly guilty of any lack of fidelity to his client, we do mean to hold that this record, without further testimony, shows that this sale was invalid, and that the client is entitled to all the money received by the attorney, less what it may appear he has paid to her, or to her agent with her knowledge or her subsequent ratification. Let the judgment of the court below be

*Reversed. All the Justices concurring, except Lumpkin, P. J., absent.*