Williams *et al.* v. Bailey *et al.*—Syllabus.

J. A. WILLIAMS AND L. P. HARDEE, COPARTNERS DOING
BUSINESS AS WILLIAMS & HARDEE, AND W. L. ABBOTT,
*Appellants,* v. ANNIE E. BAILEY AND THOMAS W. FIELD-
ING, *Appellees.*

## Opinion Filed February 23, 1915.

1. Where an attorney-at-law seeks the specific performance of
   a verbal agreement with his client for the conveyance of
   land, and testifies in his own behalf as to the existence of
   such agreement, it is permissible on cross-examination to
   enquire fully into the transaction, to ascertain the considera-
   tion, the relation the parties bore to each other, and whether
   the requisite good faith and fair dealing was practiced by
   the attorney. A wide latitude of cross-examination is
   allowed.

2. Specific performance of a contract for the sale of land is a
   matter to be determined by the court in the exercise of a
   sound reasonable discretion after considering and applying
   to the facts of the particular case the established principles
   of equity jurisprudence that are appropriate.

3. The degree of proof required to establish the existence of a
   parol agreement to convey lands in a proceeding to enforce
   specific performance of such agreement is greater than a
   mere preponderance of evidence. The evidence should be
   clear, full and free from suspicion.

4. Where possession of the land is relied on as part performance
   of a parol agreement, to convey it, in order to take the agree-
   ment out of the statute of frauds it should appear not only
   that possession was taken of the land in pursuance of the
   contract, but that the possession was exclusive, notorious
   and continuous.

5. In transactions between attorney and client where the for-
   mer acquires the subject-matter of the litigation, there is no
   presumption of innocence or improbability of wrong doing

15—Vol. 69.

on the part of the attorney, but the burden is upon him to establish the utmost of good faith and fairness on his part in such transactions, he has the responsibility of proving that his diligence to do the best for his client has been as great as if he were only an attorney dealing for his client with a stranger.

Appeal from Circuit Court for Alachua County; J. T. Wills, Judge.

Decree affirmed.

*Robt. E. Davis,* for Appellants;

*W. S. Broome* and *Evans Haile, for* Appellees.

ELLIS, J.—This was a suit brought in the Circuit Court for Alachua County in equity, by the appellants against the appellees for the specific performance of a parol agreement to convey lands.

The bill alleges that the appellee Annie E. Bailey, on or about the 16th day of April, 1913, sold to the appellants Williams and Hardee all her title, interest and claim to certain lands in Alachua County, Florida, described as follows: The south half of the southwest quarter of section twenty-four, and the east half of the northwest quarter and the northwest quarter of the northwest quarter of section twenty-five all in Township Ten South Range Fifteen East containing two hundred acres of land more or less; that Annie E. Bailey was the holder of the legtl title to the lands and promised to execute and deliver to Williams and Hardee a quit-claim deed thereto for the consideration of three hundred dollars and the further consideration of a quit-claim deed to be executed and de-

livered to her by J. A. Williams and wife and L. B. Hardee to certain other lands, to wit, the southwest quarter of Section Seven in Township Ten South Range Nineteen East in Alachua County, containing one hundred and sixty acres, more or less; that the appellants Williams and Hardee paid to the appellee Annie E. Bailey the sum of three hundred dollars by check in which was included the further sum of one hundred and twenty-eight and 39-100 dollars which was due to her as guardian of her minor children from the sale of certain lands upon a final and complete settlement with her making the total amount named in the check four hundred and twenty-eight and 39-100 dollars; that the check was accepted and paid; that on the same day J. A. Williams and wife and L. P. Hardee executed and delivered to Mrs. Bailey their quit-claim deed to the one hundred and sixty acre tract; that while the consideration in that quit-claim deed is expressed to be one hundred and ninety-three and 04-100 dollars, the real consideration as known to Mrs. Bailey was her right, title, interest and claim in the two hundred acre tract; that after the said agreement appellant Williams and Hardee, with the consent of Mrs. Bailey, entered into the possession of the two hundred acre tract; that they carried out in every particular their part of the contract with Mrs. Bailey, and on the 17th day of February, 1913, presented to her a quit-claim deed to themselves for the two hundred acre tract, and requested her to execute it, but she refused, and still refuses to comply with the request; that appellants Williams and Hardee have received no consideration from Mrs. Bailey for the three hundred dollars paid to her and the quit-claim deed to the one hundred and sixty acre tract, other than her agreement to quit-claim to them the two hundred acre tract;

that on June 14, 1912, Mrs. Bailey sold to R. S. Tucker the one hundred and sixty acres of land; that on December 2, 1912, appellants Williams and Hardee contracted with W. L. Abbott, one of the appellants, to sell to him the two hundred acres of land which Mrs. Bailey had agreed to convey to them; that they delivered possession of the land to W. L. Abbott, who has ever since remained in possession of it; that W. L. Abbott has made permanent improvements upon the lands to the amount of Five hundred dollars; that after the agreement made by Mrs. Bailey with Williams and Hardee to quit-claim to them the two hundred acres, and after they had delivered possession of the land to W. L. Abbott, and after he had expended a large sum of money in improvements upon the premises, and while he was in possession of the land, Mrs. Bailey, on January 11th, 1913, sold the two hundred acre tract to Thomas W. Fielding, one of the appellees, and on the same day commenced her suit in ejectment for the use of Thomas W. Fielding against W. L. Abbott to "obtain possession" of the said land; that in March, 1913, W. L. Abbott filed his plea of not guilty in that suit, and a plea setting up the equitable title of Williams and Hardee; that Mrs. Bailey is the head of a family, and has not sufficient property to satisfy a judgment against her if complainants should obtain one against her, in an action at law; that Williams and Hardee have no adequate defense at law in the action of ejectment, if they should be made defendants therein, although they have a complete equitable defense, but which is not available at law.

There are other allegations in the bill to the effect, that Williams and Hardee have not sufficient time before the trial of the ejectment suit to have their legal title to the lands "established in a Court of Equity"; that a judgment

in the ejectment suit in favor of the plaintiff therein would create a cloud on the title of Williams and Hardee to the lands; that a judgment in the ejectment suit in favor of the plaintiff for mesne profits would work an irreparable injury upon the complainants; that the plaintiff in the ejectment suit is seeking to obtain an unconscionable advantage over the complainant in the bill by trying to secure the immediate possession of the land. The bill waives answer under oath, and prays for an injunction to restrain the plaintiffs in the action of ejectment from the further prosecution of that suit; that Annie E. Bailey be required to execute and deliver to Williams and Hardee a good and sufficient quit-claim deed to the two hundred acre tract, or that a decree be made vesting in Williams and Hardee all the right, title, claims and interest that Annie E. Bailey had on the 16th day of April, 1913, in the said lands; for general relief and subpoena. The complainants on May 13, 1913, filed the affidavits of J. N. Williams and L. P. Hardee and W. L. Abbott in support of the bill. Annie E. Bailey and Thomas W. Fielding filed separate answers. The answer of Annie E. Bailey denies the agreement to sell the land referred to as the two hundred acre tract; that on the 16th day of April, 1912, and long prior thereto Williams and Hardee were representing her as attorneys at law in "many matters, and particularly in suits and matters involving title to property belonging to her and in which she claimed an interest;" that Williams and Hardee did not give her information about her property and her rights therein that she was entitled to receive from them, but on the contrary they failed to give her such information as she was entitled to receive from them; that they, with intent to obtain her property, advised her that it was necessary for her as guardian of

her minor children to convey to them the two hundred acre tract, that she relying upon the advice of her counsel executed the deed as guardian as aforesaid; that at the time she executed the deed as guardian, the lands described therein belonged to her in her own right, but that Williams and Hardee sought by that means to obtain the title from her, believing at the time that by that deed they obtained title to the lands, that she executed the deed because Williams and Hardee, her attorneys, told her it was necessary to protect her and her property.

The answer admits that Annie E. Bailey was the holder of the legal title to the land on the 16th day of April, 1912, but denies that she agreed to convey the same to Williams and Hardee for Three hundred dollars, or for any consideration, and avers that she owned the land when she conveyed the same to Thomas W. Fielding. She admits receiving the check for $428.39 from Williams and Hardee, but denies that any part of that sum was paid to her for or in part payment for the land, but that the check was given to her as part payment for money that Williams and Hardee as her attorneys had collected for her. She admits that J. A. Williams and wife and L. P. Hardee executed a quit-claim deed to her for the one hundred and sixty acre tract, but denies that it was by way of consideration for a quit claim deed by her to them for the two hundred acre tract; that the one hundred and sixty acre tract rightfully belonged to her at the time Williams and Hardee quit-claimed to her; that Williams and Hardee never entered into possession of the two hundred acre tract with her knowledge and consent, and denies that they ever entered into possession of the land. She admits that she refused to execute a quit-claim deed to them in February, 1913, when they requested her to do

so; that she did sell the one hundred and sixty acre tract as alleged in the bill, but Williams and Hardee were not injured thereby. She denies the agreement between Williams and Hardee and Abbott, denies that Abbott took possession of the land and made improvements thereon. She admits conveying the two hundred acre tract to Fielding, that he paid her a valuable consideration therefor, denies the ejectment suit so far as there are any allegations in the bill that she brought it, and says that if there is such a suit in her name it is for the use of Fielding. She admits that she is the head of a family, but denies that she is insolvent.

The answer of Thomas W. Fielding denies all allegations of the bill except that Annie E. Bailey executed a warranty deed to him on January 11, 1913, as alleged, which allegation he admits. His answer avers that at the time of such purchase he had no notice that any person other than Mrs. Bailey had any claim to or on the land, and that the complainants have no interest in the land nor any title thereto. A demurrer to the bill is incorporated in the answer on the grounds: that the bill is without equity; that this court has no jurisdiction; that complainants have an adequate remedy at law; that there was no contract in writing between Mrs. Bailey and Williams and Hardee for the conveyance of the land by her to them, and that the bill affirmatively shows this to be true; that the possession of the land by Abbott was not notice of the alleged equitable title of Williams and Hardee, but was presumed to be the possession of Mrs. Bailey, the holder of the legal title; that the bill does not show that he had notice of the agreement between Mrs. Bailey and Williams and Hardee; that Williams and Hardee are not proper parties complainant because they had be-

fore filing the bill conveyed their interest in the land to Abbott; that Williams and Hardee never attempted to obtain a conveyance from Mrs. Bailey until after the ejectment suit was brought, and that the bill contains no offer to do equity and shows no reason for the granting of an injunction as prayed.

On May 13, 1913, an order was made granting a temporary injunction as prayed, upon the complainants entering into a bond in the sum of one thousand dollars with sufficient sureties to be approved by the clerk, conditioned upon paying the defendant all costs, damages and expenses that he may sustain if the injunction be dissolved, or the bill dismissed on final hearing. The bond was filed and approved by the clerk, and an injunction was issued on June 7, 1913, enjoining the defendants Annie E. Bailey and Thomas W. Fielding from further prosecuting the ejectment suit to obtain possession of the two hundred acre tract.

Replications were filed to the answers of the defendants and on July 1, 1913, an examiner was appointed to take testimony. In December, 1913, the examiner filed his report, and on March 5, 1914, the cause was set down by defendants for final hearing. The complainants and defendants filed motions before the Chancellor insisting upon their respective objections made before the examiner to the reception and rejection of evidence. These motions were heard and disposed of by the Chancellor, and a final decree was made and entered finding the equities "are not with the complainants," dissolving the injunction theretofore issued, and dismissing the bill at complainants' cost. From this decree the complainants appealed.

From the evidence in this case it appears that Annie E. Bailey was once the wife of J. S. Bailey, and divorced him. J. S. Bailey died leaving about sixteen children, many of whom were minors, four of whom were minor children by his wife Annie. During the year 1909 he conveyed to J. D. Guthrie the south half of the southwest quarter of section twenty-four, and the northwest quarter of the northwest quarter and east half of the northwest quarter of Section twenty-five, Township Ten South range Fifteen East, in Alachua County, hereafter referred to as the two hundred acre tract. This is the tract over which the litigation occurred. There was another tract, hereafter called the one hundred and sixty acre tract described particularly as the southwest quarter of Section Seven, Township Ten South Range Nineteen East in Alachua County, of which he appears to have died seized and possessed. Bailey left a will, the contents of which was not given in evidence. Roland and Holt were executors. In          , 1910, J. D. Guthrie conveyed the two hundred acre tract to Annie E. Bailey, hereafter referred to as Mrs. Bailey, who is one of the appellees here. During June, 1911, Mrs. Bailey obtained a judgment at law against Roland and Holt as executors of the will of J. S. Bailey, in the sum of $4,145, and court costs amounting to $73.40.

The complainants Williams and Hardee, two of the appellants here, are attorneys at law, and as such represented Mrs. Bailey in her suit against the executors and in looking after her interests in the estate as guardian of her minor children, for which service it does not appear what compensation they were to receive. On April 6, 1912, the sheriff of Alachua County, under instructions from Williams and Hardee, levied the execution which

issued upon Mrs. Bailey's judgment, upon the two tracts of land, and after advertising the sale sold them at public outcry. Williams and Hardee became the purchasers of the two hundred acre tract for one hundred dollars, and obtained a sheriff's deed therefor, while the one hundred and sixty acre tract was purchased by them for Mrs. Bailey. Prior to this sale Mrs. Bailey had obtained quit-claim deeds from many of the heirs of J. S. Bailey through their guardians to the two hundred acre tract, and Williams and Hardee had obtained quit-claim deeds to the one hundred and sixty acre tract. Mrs. Bailey protested to the sheriff against the sale of the lands under the execution and prior to the sale went with him to the office of Williams and Hardee to talk over the matter, where she seemed to be convinced by Williams and Hardee that it was proper to sell the land under the execution, and the sale was made in due course with the result as stated Prior to this sale Mrs. Bailey upon the request of Williams and Hardee, as guardian of her four minor children, executed a deed to Williams and Hardee to the two hundred acre tract, and the one hundred and sixty acre tract, Williams and Hardee acting as her attorneys in securing the order of court. It seems that Williams and Hardee also acted as attorneys for the guardians of some of the minor children of Bailey in their claims against the estate. It seems that these claims were adverse to the claim of Mrs. Bailey to the two hundred acre tract, while they were equally interested with Mrs. Bailey's four children in the one hundred and sixty acre tract, and it was through Williams and Hardee, her attorneys, that Mrs. Bailey secured quit-claim deeds from some of the heirs of J. S. Bailey to the one hundred and sixty acres. Roland and Holt, the executors of the will of J. S. Bailey,

had on hand $891.96 in money belonging to the estate. After the judgment was obtained by Mrs. Bailey against them, Williams and Hardee collected that money, Mrs. Bailey receiving only one hundred and twenty-eight dollars and 39 cents, which was paid to her on April 16, 1912, by Williams and Hardee by check. This check was for the sum of Four hundred and twenty-eight dollars and 39 cents, and included the three hundred dollars which they claim was the price agreed upon between them and Mrs. Bailey to be paid in money for the two hundred acres. At the same time they executed in her favor a quit-claim deed to the one hundred and sixty acres which they claim was the remainder of the consideration for the two hundred acres to be quit-claimed by her to them. At that time they took from her the guardian's deed to both tracts as stated.

In August, 1912, Williams and Hardee entered into a contract with W. L. Abbott, one of the complainants below, to sell him the two hundred acre tract. Abbott went upon the place, built some houses and repaired fences and spent in improvements about five hundred dollars. Mrs. Bailey at the time was living on the place, her son had planted a crop on it, but had abandoned it, and she was in charge of the crop and pasturing her stock on the land. The price which Abbott agreed to pay Williams and Hardee for the place was two thousand dollars, he paid ten dollars cash and went on the place and made the improvements as stated. In    , 1912, Mrs. Bailey conveyed the two hundred acres to Thomas W. Fielding by warranty deed for a consideration of four hundred dollars, and on the same day Fielding instituted an action of ejectment in the Circuit Court for Alachua County, in the name of Mrs. Bailey for his use against Abbott for the

possession of the two hundred acres. This suit was without the knowledge of Mrs. Bailey.

It is contended by Williams and Hardee, and such contention is the basis of this suit, that they entered into a parol agreement with their client Mrs. Bailey, whereby for the consideration of three hundred dollars in money and a quit-claim deed from them to her for the one hundred and sixty acre tract she would execute a quit-claim deed to them for the two hundred acre tract; that pursuant to such agreement they paid her the three hundred dollars which was included in the check mentioned, and executed and delivered to her the quit-claim deed to the one hundred and sixty acres; that they took possession of the two hundred acres, but she refused to comply with the agreement on her part, and has not executed the quit-claim deed to them for the two hundred acres. This suit is to compel the specific performance of that alleged agreement. Mrs. Bailey denies the existence of such an agreement, denies that she authorized them to take possession of the land; avers that she was in possession during the year 1912, had never surrendered possession to any one, nor authorized any one to go on the land and make improvements; that the three hundred dollars paid to her by Williams and Hardee was collection by them for her from the sale of timber on the one hundred and sixty acre tract; that in executing the guardians deed to them for the two hundred acre tract and in consenting to the sale of the land under the execution she acted according to their advice as her counsel, and that she has never received any part of the $891.96 except the sum of one hundred and twenty-eight and 39-100 dollars included in the check for Four hundred and twenty-eight and 39-100 dollars paid to her on April 16, 1912, and fifty dollars at

some prior time; that she never signed any agreement in writing, nor entered into one orally with them to convey to them the two hundred acre tract.

Many of the assignments of error are based upon the defendants' objections to questions propounded by solicitors for the defendants to complainants' witnesses. These questions sought to elicit from L. P. Hardee and J. A. Williams, who constituted the law firm of Williams and Hardee, who were complainants below and witnesses in their own behalf, information as to their professional relations with Mrs. Bailey, the manner of the discharge of their duties to her, and the particular details of the various transactions which led up to and culminated in the alleged contract between them and Mrs. Bailey for the purchase by them of the two hundred acre tract. We do not regard the information sought by these questions as either "improper, immaterial or irrelevant"; nor that the questions were improper in cross-examination. These two witnesses in their own behalf testified concerning an agreement which they said Mrs. Bailey had made with them for the conveyance of certain lands, and which they were seeking to enforce. It was permissible to inquire fully into this transaction to discover its faults, if any, to inquire into the consideration, to ascertain the relations the parties bore to each other, and whether the requisite good faith and fair dealing had been practiced. All of this went to the very vitals of the agreement about which the witnesses testified. In such matters a wide latitude of cross-examination is allowed. If the evidence sought could throw light on the transaction it was admissible. Volusia County Bank v. Bigelow, 45 Fla. 638, 33 South. Rep. 704.

The above was a case involving fraud, and the court

said "especially should extreme latitude be permitted on the cross-examination of the party asserting title under a sale to her, alleged to be fraudulent." The court quoted approvingly from Zerbe v. Miller, 16 Pa. St. 488, text 495. in which it was said: "This latitude can never injure an honest man. Covin and deceit avoid the light, but fair dealing invites investigation." But the case at bar is analogous. The relations of attorney and client existing between Williams and Hardee and Mrs. Bailey exacted from them the very highest degree of good faith in the minutest detail of this transaction. It was therefore important to show the relation and examine the transaction closely. If there was any circumstance which discredited their good faith, it was proper to bring it to light. Fields v. State, 46 Fla. 84, 35 South. Rep. 185.

The record in this case leaves some very salient and important points in doubt, which it was absolutely necessary for the complainants to make clear, not by a preponderance of the evidence merely, but indisputably certain almost to the degree of demonstration to entitle them to the relief prayed for in the bill. In all their dealings with Mrs. Bailey, their client, particularly in making the agreement with her for the purchase of the two hundred acre tract, did Williams and Hardee explain to her fully and fairly every detail of the transactions, did they exercise toward her that *uberrima fides* which the relations between them of attorney and client required, and the law demanded? Why did it become necessary to distribute between the heirs of J. S. Bailey the $891.96 collected by the attorneys for Mrs. Bailey from the executors of the will of J. S. Bailey on the judgment obtained by them for Mrs. Bailey? Why was Mrs. Bailey required to share that sum so collected on her judgment with the heirs of J.

S. Bailey and what by way of consideration did she re-
ceive for it, having already the legal title to the two hun-
dred acre tract? If Williams and Hardee collected
$891.96 from the executors and paid Mrs. Bailey only one
hundred and twenty-eight and 39-100 dollars of that sum
while she had already the legal title to the two hundred
acres, why were they to receive the one hundred and sixty
acr tract valued by them at about two thousand dollars?
Why did they represent some of the heirs of J. S. Bailey
whose interests were inimical to those of Mrs. Bailey? Did
they make compromises with the former at the expense
of the latter to their personal financial advantage? What
became of the one hundred dollars which the two hundred
acre tract brought at sheriff's sale, and what did the one
hundred and sixty acre tract bring at that sale, and who
received the money? Why were the deeds from J. S.
Bailey to J. D. Guthrie, and from Guthrie to Mrs. Bailey
for the two hundred acre tract treated as void, and were
the reasons for so treating them as well as the effect on
Mrs. Bailey's interests fully explained and made clear to
Mrs. Bailey? When, at what time and for what consid-
eration did Williams and Hardee acquire an interest in
the one hundred and sixty acre tract, and to whom was
the consideration paid? If the three hundred dollars paid
by Williams and Hardee to Mrs. Bailey on April 16, 1912,
were the proceeds from the rental or sale of timber on
the one hundred and sixty acre tract, what considera-
tion did they pay for the quit-claim deed from Mrs.
Bailey to the two hundred acre tract? What acts of open,
notorious and exclusive possession of the two hundred
acre tract did Williams and Hardee exercise after their
alleged agreement with Mrs. Bailey for the purchase of
that land? These and a few other pertinent questions

are not clearly and satisfactorily answered in the record.

It is a well established principle of law that specific performance of a contract for the sale of lands is not a matter of right in either party, but a matter of sound reasonable discretion in the court. The question is not what the court must do, but what it may do under the circumstances. Maloy v. Boyett, 53 Fla. 956, 43 South. Rep. 243; Asia v. Hiser, 38 Fla. 71, 20 South. Rep. 796; Nobles v. L'Engle, 58 Fla. 480, 51 South. Rep. 405. Whether the specific performance of a contract for the conveyance of real estate will be enforced by judicial procedure, is determined by the application of the established principles of equity designed for administering justice that are appropriate to the facts and circumstances of the particular case. L'Engle v. Overstreet, 61 Fla. 653, 55 South. Rep. 381.

It is the rule that the degree of proof required to establish the existence of a parol contract to convey lands in order to warrant enforcement of specific performance is greater than a mere preponderance of evidence. Dunn v. McGovern, 116 Iowa, 663, 88. N. W. Rep. 938; Dalzell v. Dueber Watch Case Manf'g Co., 149 U. S. 315, 13 Sup. St. Rep. 886; Sands v. Sands, 112 Ill. 225; Langston v. Bates, 84 Ill. 524. The evidence must be clear, full and free from suspicion. Harris v. Elliott, 45 W. Va. 245, 32 S. E. Rep. 176. See also Knight v. Knight, 51 W. Va.. 518, 41 S. E. Rep. 905; Purcell v. Miner, 4 Wall. (U. S.) 513, text 517; Beall v. Clark, 71 Ga. 818; Dewey v. Spring Valley Land Co., 98 Wis. .83, 73 N. W. Rep. 565; Rice v. Rigley, 7 Idaho, 115; Wilmer v. Farris, 40 Iowa, 309. In the latter case it was held that admissions of the defendant made in conversations with third persons, is insuffi-

cient to establish the existence of the contract, when it is denied by the defendant under oath as a witness.

On the question of the character of possession, when possession is relied on as part performance to lift a parol contract for the conveyance of lands out of the statute, the Supreme Court of Kansas said it must be notorious, exclusive, continuous and in pursuance of the contract. Baldwin v. Baldwin, 73 Kan. 39, 84 Pac. Rep. 568; Brown on Statute of Frauds, Sections 472-476; Roberts v. Templeton, 48 Ore. 65, 80 Pac. Rep. 481, 3 L. R. A. (N. S.) 790, note page 813.

In the case at bar it was not made to appear that Williams and Hardee took such possession that could be called distinct, exclusive or notorious. It does not appear that there was ever a change of possession from Mrs. Bailey to them.

Another very important consideration in this case was the undoubted relation of attorney and client that existed between Williams and Hardee and Mrs. Bailey. This relation had extended over a period of years and existed immediately prior, if not at the actual time of the making of the alleged contract. These gentlemen had represented her in all her litigations and claims against the estate of J. S. Bailey. It was the duty of counsel to advise, counsel and fully protect and advance her interests. This relation admits of so much influence and so much confidence and abuse of confidence, and of so great an opportunity for extortion, that transactions between attorney and client when the former seemingly profits at the expense of the latter, will, if not regarded as presumptively void, be examined with the closest scrutiny to the end that it may be determined whether the attorney has

exercised toward his client the utmost of good faith in every detail of the transaction. See Vanasse v. Reid, 111 Wis. 303, 87 N. W. Rep. 192; Stubinger v. Frey, 116 Ga. 396, 42 S. E. Rep. 713; Burnham v. Heselton, 82 Me. 495, 20 Atl. Rep. 80; Lewis v. Brown, 36 W. Va. 1, 14 S. E. Rep. 444. The burden is upon the attorney when he acquires the subject-matter of the litigation to affirmatively establish utmost of good faith and fairness of the transaction as well as adequacy of consideration, also that he informed his client of the material facts and gave her the same disinterested advice he would have given had the sale been made to a stranger. There is no presumption of innocense or improbability of wrong doing. He has the heavy responsibility of proving that his diligence to do the best for his client has been as great as if he was only an attorney dealing for her with a stranger. Gibson v. Jeyes, 6 Ves. Jr. 266; Holman v. Loynes, 4 De Gex. M. & G. 270; Young v. Murphy, 120 Wis. 49, 97 N. W. Rep. 496; Cox v. Delmas, 99 Cal. 104, 33 Pac. Rep. 836; Condit v. Blackwell, 22 N. J. Eq. 481; Day v. Wright, 233 Ill. 218, 84 N. E. Rep. 226; Dunn v. Record 63 Me. 17; Klain v. Borchert, 89 Minn. 377, 95 N. W. Rep. 215; Crocheron v. Savage, 75 N. J. Eq. 589, 73 Atl. Rep. 33, 23 L. R. A. (N. S.) 679. In many States it has been held that the transaction is presumptively void. Keenan v. Scott, 64 W. Va. 137, 61 S. E. Rep. 806; Stubinger v. Frey, *supra*; Roby v. Colehour, 135 Ill. 300, 25 N. E. Rep. 777; Condit v. Blackwell, *supra*. And voidable at the option of the client. Lane v. Black, 21 W. Va., 617. In the case of Bolles v. O'Brien, 63 Fla. 342, 59 South. Rep. 133, this court said the whole burden of establishing by clear and convincing evidence the fairness of the agreement and

that it was made upon full and adequate consideration, is cast upon the attorney. See 2 R. C. L. 966-975.

The assignments of error are numerous. Because of the view we take of this case, it is unnecessary to discuss them in detail here. They have been urged with diligence and force by appellants counsel, and all of them have been examined and considered by this court. Those assignments which are based upon objections to questions propounded by defendants' counsel upon cross-examination of the witnesses L. P. Hardee and J. A. Williams which sought to elicit information as to the relations existing between them and Mrs. Bailey as attorneys and client; the manner and particulars of the discharge by them of the duties to Mrs. Bailey arising out of that relation; the acquisition by them of the subject-matter of their fee or the property affected by the litigation which they were conducting, or had conducted for her, and which figured in the transaction on which this suit was based; their knowledge of the character of the claims of the Bailey heirs to the two tracts of land and Mrs. Bailey's interests or claims thereto as they were known to her attorneys; their dealings with the other heirs of Bailey in so far as their claims were inimical to the interests of Mrs. Bailey; we think were relevant and material, and proper in cross-examination of those witnesses, and went directly to the good faith and fair dealing of the attorneys with their client which they were bound to make clear. That it was not matter of affirmative defense, but on the contrary essential to be shown by the complainants in order to maintain their cause.

The one hundred and the one hundred and first assignments we think are not well taken. The evidence sought

was clearly admissible as tending to show Mrs. Bailey's interest in the one hundred and sixty acre tract which Williams and Hardee offered as part of the consideration for the other tract which they seek to obtain from Mrs. Bailey. As to the matter which was made the basis of the one hundred and eighth and one hundred and ninth assignments, the substance was brought out in the cross examination by the defendants' counsel of the witnesses Williams and Hardee which we hold to have been proper, this being true the documents themselves were not material. The case of Volusia County Bank v. Bigelow, 45 Fla. 638, 33 South. Rep. 704, does not support appellants' one hundred and tenth assignment. In that case Mrs. Bigelow's husband was in possession of the goods, his declaration at that time concerning the disposition of the property the court held need not have been brought home to her. In this case the declarations of Mrs. Bailey to Williams and Hardee could not affect Fielding's rights unless they had been brought home to him. The circumstances of the parties were different from those in the Bigelow case, and nothing short of the notorious possession of the lands by Williams and Hardee would have availed them.

The substance of the matter made the basis of the one hundred and seventeenth assignment, has been considered in the other assignments, and we think this assignment is not well taken.

Complainants moved to strike the testimony of Thomas W. Fielding as to conversations he had with Mrs. Bailey concerning the possession of the land, presumably her possession, as the testimony of Mr. Fielding related to that. The burden was upon Williams and Hardee to

show their possession open, notorious, exclusive, Mrs. Bailey's statements to Mr. Fielding as to her occupancy of the land could not possibly affect their possession if it existed. The question was had Williams and Hardee met the burden which rested upon them in this case as to actual possession of the land as well as to the other elements necessary for them to establish in order to obtain the relief they prayed for in the bill, and not the good faith of Fielding, therefore the statements made by Mrs. Bailey to him became immaterial it is true, but harmless nevertheless.

This disposes of all the assignments of error except the last, which is directed against the decree. The Chancellor reviewing all the facts in the case decreed that the injunction should be dissolved and the cause dismissed. No error has been made to appear in this record. The decree was based largely on questions of fact. The principles of the law which he evidently applied to those facts we think are sound and were correctly applied. Every presumption is in favor of the ruling of the trial judge. Guerra v. Guiterrez, 66 Fla. 570, 64 South. Rep. 232; Mock v. Thompson, 58 Fla. 477, 50 South. Rep. 673.

The decree is affirmed.

TAYLOR, C. J., AND SHACKLEFORD, COCKRELL AND WHITFIELD, JJ., concur.