ROY W. JACKSON AND PEARL H. JACKSON, HIS WIFE, *Appellants*, v. JOHN D. JACKSON, *Appellee*.

Opinion Filed October 18, 1920.

1. An appeal in chancery from a final decree opens for consideration by the appellate court the merits of the cause.

2. The rulings of the chancellor who tried the cause are presumed upon appeal to be correct and the burden is upon the appellant to make it clearly to appear that such rulings are erroneous, or the decree will be affirmed.

3. A resulting trust in real property arises where an agent invests his principal's money in such property with the latter's consent, but takes the title thereto in the agent's name, and the fact that the agent applies the particular money furnished to him for the purchase to his own use, but later substitutes therefor funds of his own, does not alter the rule.

4. Where a married woman contributed money toward the purchase of real property by her husband who had accepted from his father a sum of money and a commission to purchase a lot for him, but of which trust she had no knowledge, and the purchase of the real property by the son was in the execution of the commission entrusted to him by his

father, but the price paid for the property was greater than the sum of money which the father gave to his son for that purpose by the amount contributed by the wife, the latter has a prior lien upon the property purchased to secure the repayment to her of her contribution.

An Appeal from the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Decree modified.

*Samuel T. Fletcher*, for Appellants;

*Hilton S. Hampton*, for Appellee.

ELLIS, J.—John D. Jackson exhibited his bill in chancery against his son, Roy W. Jackson, and the latter's wife, alleging in substance that the complainant in 1908 gave his son six hundred and fifty dollars with instructions to buy for the complainant certain lots in Hillsborough County which he wished to occupy for his home. That the son purchased the property designated, but took the title in his own name. The complainant moved upon the lots taking possession of them as his own and has continued in possession ever since. That recently complainant discovered that the title had been taken in his son's name and immediately demanded from him a conveyance, which was refused; the son thereupon executed to his wife Pearl a deed of conveyance for the alleged consideration of one dollar. The prayer is that a trust be declared in the property for the complainant's benefit, that the defendants be required to convey the land to complainant, and for general relief.

The defendants answered denying the material allega-

tions of the bill, *viz*, that the complainant gave the defend-ant in 1908 or at any other time the sum of six hundred and fifty dollars, or any sum with which to buy the prop-erty. The answer avers that the *defendant* has lived upon the property on the defendants' bounty and has therefore never held it adversely claiming it as his own. The cause was referred to a master to take testimony and transmit it to the court.

Testimony was taken, and upon final hearing the court decreed that the equities were with the complainant and granted the relief sought. From that decree the defend-ants appealed.

The errors assigned are as follows: The court erred in finding that the property was purchased with funds supplied by the complainant; in finding that the com-plainant is the owner of the property; in finding the equities to be with complainant; in finding that the de-fendant, Pearl Jackson, took the title with knowledge of the complainant's rights; and in rendering the decree granting relief.

As an appeal in a chancery cause opens the entire case for consideration by the appellate court, it would seem that one assignment of error in this case at least would have been sufficient to present the whole merits of the cause, because the appeal is from the final decree, and this court by a very long line of decisions has held that an appeal in chancery from a final decree brings up the whole merits of the cause.

In the case at bar, however, no question is argued ex-cept the sufficiency of the evidence to justify the decree. Several phases of the evidence are discussed: Whether the complainant gave the money to his son for the pur-

pose alleged, whether the money was used in the purchase of the property, the character of the complainant's possession of the lots, the defendants' claim for credits on account of money given to his father and the wife's knowledge of the complainant's rights.

There is ample evidence to show that the defendant, Roy Jackson, purchased the property described upon a request by the complainant, his father, to buy "a home" for the latter, that the money was supplied by the complainant, his son, Charlie, and an uncle of the defendant. A large part of the money was in the defendant's hands for several years before the property was bought, he finally did buy the property for his father and took the title in his own name. That the complainant went into possession and he and his wife lived thereon as their home; that the defendant claimed no title to the lots, and although he acknowledged taking title in his own name, said to his father and mother that he would divide the property between the heirs upon the death of complainant and his wife. The defendant testified that an amount of money, $425.00, was given to him by his father to be used if the defendant wished in business for himself, and that it was delivered to him in a bank in Tampa by his brother-in-law, Mr. Stone; that he used the money to go in business and failed, but he has returned it all in small payments to his father. that payments were made by him to his father in amounts of ten dollars monthly for many years; that the money which he used to buy the place in litigation he saved from his salary and obtained from his wife who had earned the part she contributed teaching school; that he paid $800.00 for the place, including interest on deferred payments; that his wife worked at other occupations, saved her money and contributed about one-half toward the purchase price of the property. The

defendant testified that he bought the place that his father and mother might have a home for their lives, but that the money used was his own and his wife's. The defendant has paid the taxes upon the property and the complainant has paid no rent. In January, 1917, the conveyance was made by the defendant to his wife. Mr. Stone was called and testified that he did not pay the money to defendant in the bank; that the money was in his possession for John D. Jackson and he paid it to the latter in Stone's house in St. Petersburg. With evidence as conflicting and contradictory as that appearing in the record in this case it is impossible to say that the conclusion reached by the chancellor is clearly erroneous. He held that the equities were with the complainant; in doing so he concluded that the evidence offered in behalf of the complainant was more worthy of belief than that offered by the defendants.

The presumption is in favor of the correctness of the trial court's ruling, and unless the appellants make it clearly to appear from the record that the ruling was erroneous the decree should be affirmed. See Magbee v. Kennedy, 26 Fla. 158, 7 South. Rep. 529; Mock v. Thompson, 58 Fla. 477, 50 South. Rep. 673; Carr v. Lesley, 73 Fla. 233, 74 South. Rep. 207; Shad v. Smith, 74 Fla. 324, 76 South. Rep. 897; Johns v. Bowden, 72 Fla. 530, 73 South. Rep. 603; Williams v. Bailey, 69 Fla. 225, 67 South. Rep. 877.

The contribution of money by Mrs. Pearl Jackson, which, according to her testimony, amounted to three hundred and eighty-seven dollars toward the purchase price of the lots, presents the only difficulty in the case. The testimony as to the contributions by her toward the purchase price of the lots is corroborated by her husband

and undisputed by any one.   Her purpose seems to have been to assist her husband in purchasing a place for the latter's father and mother without knowledge that her husband held funds of his father with which to buy the property.   She seems to have invested her money in it with a view of enabling her husband to acquire it, although being willing for her husband's parents to occupy it during their lives.   We think she has an equity in the lots to the extent of the money furnished by her.

An agent who invests his principal's money in real estate with the latters knowledge, but takes the title in himself without the consent of his principal, a resulting trust in favor of the principal will arise.   The fact that he applies the particular money furnished him for the purchase to his own use and substitutes therefor funds of his own, does not alter the rule.   See 26 R. C. L. 1228-1229.

The complainant's possession of the property was sufficient notice to Mrs. Pearl Jackson of the nature and character of the claim or title by which he held.   See Tate v. Pensacola, Gulf, Land & Development Co., 37 Fla. 439, 20 South. Rep. 542; Massey v. Hubbard, 18 Fla. 688. See also 13 L. R. A. (N. S.) 56, Note.

It is ordered that the decree be, and the same is hereby, modified to secure to Mrs. Pearl Jackson a prior lien upon the lots, after conveyance by her and her husband to the complainant, to secure the payment to her of the principal sum of three hundred and eighty-seven dollars.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.