380 So.2d 1090 (1980)
Earlene P. BULLARD, Appellant-Cross-Appellee,
v.
Charles B. BULLARD, Appellee-Cross-Appellant,
No. 79-1264.
District Court of Appeal of Florida, Third District.
February 19, 1980.
Horton, Perse & Ginsberg and Mallory H. Horton, Miami, for Earlene P. Bullard.
Daniel A. Sorrentino, Miami, for Charles D. Bullard.
Before BARKDULL, SCHWARTZ and BASKIN, JJ.
*1091 SCHWARTZ, Judge.
The wife appeals and the husband cross-appeals from a purported[1] final judgment in a dissolution action. We affirm in part and reverse in part.
The parties were married in 1964 and separated in 1977. They had no children. Mrs. Bullard is a teacher, and earns approximately $18,000 a year; Mr. Bullard earns slightly more than that as an employee of the Dade County Community Action Agency. Although neither brought any property into the marriage, by the time of the dissolution they owned, all by the entireties, the marital home and its furnishings, two cemetery lots, a parcel of real property acquired from Mrs. Bullard's aunt, and a 1974 Pontiac automobile. Aside from providing for a credit of half of those mortgage payments on the home which had been entirely made by the wife after Mr. Bullard departed, the trial judge left the parties as he found them. He denied the wife's claim for lump sum alimony[2] and for the imposition of a trust or special equities in the husband's interest in the jointly held properties, thus providing that the Bullards had simply become tenants in common as to each of them. The wife appeals from these rulings. The husband's cross-appeal claims error in the determination below to assess attorney's fees against the husband, and in the lower court's direction that a separate proceeding be filed to partition the real property held in common.

I
As to the wife's appeal, we first reject her claim to a "special equity" in Mr. Bullard's record interests in the marital home and furniture and in the cemetery lots. These assets were bought and paid for completely from the earnings of the parties during the course of the marriage. The fact that the wife may have made larger contributions than the husband does not create an adjudicable "special equity." At the least, it cannot be said that the trial judge abused his discretion in determining that none existed as to these items. Ingram v. Ingram, 379 So.2d 955 (Fla. 1980); Ball v. Ball, 335 So.2d 5 (Fla. 1976); Smith v. Smith, 378 So.2d 11 (Fla.3d DCA 1979); Fiedler v. Fiedler, 375 So.2d 1119 (Fla.2d DCA 1979); see Duncan v. Duncan, 379 So.2d 949 (Fla. 1980); Canakaris v. Canakaris (Fla. 1980) (Case no. 54,124, opinion filed, January 31, 1980).[3]
Because of the particular circumstances under which it was acquired, we reach a contrary conclusion concerning the realty formerly owned by Mrs. Bullard's aunt, located at 1084 N.W. 74th Street, Miami. Prior to the transfer the aunt had agreed to convey the property if a mortgage and certain liens were satisfied. Mrs. Bullard in fact paid these obligations out of her own earnings. Perhaps more importantly, it was also shown that Mrs. Bullard and her husband had agreed that the property was to be held in her name alone. Only as a "favor," he undertook the paperwork involved in securing the transfer from her aunt, but the deeds he had executed were in both names. Mrs. Bullard immediately and continuously protested and Mr. Bullard immediately and repeatedly promised to have the title transferred to her. He did not keep those promises. On this record, we think it clear that Mrs. Bullard must be deemed the sole owner of the N.W. 74th Street property.
Even though the respective rights of husband and wife to jointly held property are involved, we do not confine our analysis to the question of whether the wife had a "special equity" in Mr. Bullard's interest in this parcel. In Duncan v. Duncan, supra, the supreme court stated that

*1092 "[i]n its true sense, a `special equity' is a vested interest which a spouse acquires because of contribution of funds, property, or services made over and above the performance of normal marital duties."
Under this doctrine, as we have noted in considering the home and cemetery lots, the fact that Mrs. Bullard provided the only monetary consideration for the acquisition of the aunt's property would not alone be sufficient to grant her sole title as a matter of law. This is so because these funds came from her earnings during coverture, which is not a "source clearly unconnected with the marital relationship." Ball v. Ball, supra, at 335 So.2d 5. The additional showing, however, that Mr. Bullard agreed to act on behalf of his wife in transferring the title solely to her, and that he breached promises, made both before and after the aunt's conveyance, to effect that transfer, requires a different result. As has long been held, these facts give rise to a resulting trust in favor of Mrs. Bullard in Mr. Bullard's interest in the property. Boswell v. Cunningham, 32 Fla. 277, 13 So. 354 (1893); 33 Fla.Jur.Trusts §§ 55-56 (1960); cf. Safford v. McCaskill, 157 Fla. 133, 25 So.2d 210 (1946). The rule simply stated in Jackson v. Jackson, 80 Fla. 557, 86 So. 510, 512 (1920) directly applies:
"An agent who invests his principal's money in real estate with the latter's knowledge, but takes the title in himself without the consent of his principal, a resulting trust in favor of the principal will arise."
It is true that so-called presumptions of resulting trust arising from the monetary contribution of one spouse to property taken either in both names or in the name of the other spouse have been abandoned in favor of the "special equity" approach adopted in Ball v. Ball, supra; at 355 So.2d 5, nn. 8-10. But there is nothing either in that decision or in any other which indicates that the doctrine does not apply when the facts warrant it, merely because the resulting trustee and the resulting beneficiary happen to have been married. After remand, therefore, the lower court shall enter judgment declaring Mrs. Bullard the sole owner of the N.W. 74th Street property.
Finally, the record shows that the 1974 Pontiac, although titled in both names, was being used and had been paid for exclusively by Mrs. Bullard. Since she had a demonstrated need for the car and Mr. Bullard, who owns his own, has the obvious ability to provide it without detriment to himself, we hold that it was an abuse of discretion to fail to award his interest in the vehicle to Mrs. Bullard as lump sum alimony. Canakaris v. Canakaris, supra.

II
Turning to the husband's cross-appeal, we conclude that both points he raises are welltaken.
In the Canakaris case, supra, the court reiterated the rule applicable to the lower court's award of attorney's fees to the wife:
The final issue presented to us is whether the award of the wife's attorney's fees, to be determined at a subsequent hearing, was error. In Cummings v. Cummings, 330 So.2d 134, 136 (Fla. 1976), we cited Mertz v. Mertz, 287 So.2d 691 (Fla.2 DCA 1973), as correctly stating that the purpose of section 61.16, Florida Statutes, was to ensure that both parties will have similar ability to secure competent legal counsel.
In this case, unlike Canakaris, the financial situations of the parties are virtually identical. While Mr. Bullard earns somewhat more than his ex-wife, she has more in savings and the effect of the order below was to create an almost exact equality in their other capital assets. Our determination, supra, that Mrs. Bullard is the sole owner of the N.W. 74th Street property actually effects a further imbalance in her favor. Thus, there is no basis for the requirement that the husband pay or contribute to Mrs. Bullard's attorney's fees, and that provision must be stricken from the final judgment. See also, e.g., Scattergood v. Scattergood, 363 So.2d 601 (Fla. 4th DCA 1978), and cases cited.
*1093 It was also error to require the husband to file a separate action for partition of the parties' home.[4] Bullard's amended complaint properly prayed for partition under Sec. 64.041, Fla. Stat. (1977), and Mrs. Bullard did not contest that application. The final judgment should therefore itself order the partition of the marital domicile. Pantuso v. Pantuso, 335 So.2d 361 (Fla.2d DCA 1976); see Carlsen v. Carlsen, 346 So.2d 132 (Fla.2d DCA 1977); Rankin v. Rankin, 258 So.2d 489 (Fla.2d DCA 1972).
The order under review is affirmed in part and reversed in part and the cause remanded for entry of an appropriate revised final judgment in accordance with the views and holdings stated in this opinion.
Affirmed in part, reversed in part and remanded.
BASKIN, Judge (concurring in part and dissenting in part).
With regard to the husband's cross-appeal, I disagree with the reversal of the award of attorney's fees to the wife. The award of the N.W. 74th Street property may increase the amount of the wife's assets, but it does not, however, create liquid assets readily available to her. Valparaiso Bank & Trust Company v. Sims, 343 So.2d 967 (Fla. 1st DCA 1977).
The trial judge properly exercised his discretion in awarding the wife attorney's fees based upon the record before him. Valparaiso Bank & Trust Company v. Sims, supra.
NOTES
[1] While the order below was styled a "final judgment of dissolution of marriage" and found that the parties' marriage was irretrievably broken, it does not contain any formal language actually dissolving the marriage. Obviously, this defect must be corrected upon remand.
[2] Mrs. Bullard never claimed permanent periodic alimony and withdrew her request for periodic rehabilitative alimony at the trial.
[3] The trial judge also ordered an IRS refund attributed to the parties' 1976 joint return to be divided equally. We find no error in this ruling.
[4] There was no request or need to partition the cemetery lots. As a result of our holding that Mr. Bullard has no interest in the N.W. 74th Street property, the request for partition of that parcel has become moot.