GEORGE T. WILLIAMS, TRANSFEREE OF SEEKONK CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2172. Promulgated June 19, 1944.

*Robert L. Bridges, Esq., C. William Maxeiner, Esq.,* and *Gardiner Johnson, Esq.,* for the petitioner.

*Harry R. Horrow, Esq.,* for the respondent.

1006

## OPINION.

ARUNDELL, *Judge*: The fundamental question we are called upon to determine is whether the sale of the *Willmoto* was made by Williams acting in his individual capacity, or whether he may be said to have acted as agent of the Seekonk Corporation. The respondent seeks to sustain his determination that the sale was that of Seekonk upon two grounds: First, that Williams, in contracting to sell the *Willmoto* before actually taking title in himself, could only have acted as agent of the corporation; second, that, in any event, the corporation was bound

by contract to sell the *Willmoto* by virtue of the memorandum of April 2, and Williams served as a mere conduit of title.

The first controverted point in the chain of events leading up to the ultimate sale of the *Willmoto* is the question of when title to the ship was transferred by the corporation to Williams. Several circumstances convince us, and we have so found, that this transfer did not occur until April 21, when title was formally conveyed to Williams by bill of sale. In the first place, there is nothing in the record to indicate the prior transfer. Resolutions to dissolve were adopted, but, in so far as the record shows, no liquidating dividend was declared, nor was there any authorization to transfer the ship to Williams. In the application for consent to dissolution filed with the proper authorities in New York on or shortly after April 2 it was recited that none of the assets had then been transferred to the sole stockholder; that he would acquire the assets upon dissolution; and that no liquidating dividends had been made up to that time. In the balance sheet attached to the form the *Willmoto* appeared as an asset of the corporation. Although this document was executed on March 31, it may properly be taken to indicate the status of the corporation on the date of filing. These statements contradict an alleged transfer of the *Willmoto* to Williams on March 31.

Further, the charterer was never notified of any change of ownership until the charter party had been fully completed. Norton Lilly, New York agent for Seekonk in the operation of the *Willmoto*, was not notified of any change of ownership until after Craig arrived in New York on April 20. Finally, the memorandum of April 2, confirming the offer and acceptance of April 1, provided that the bill of sale was to be signed by either Seekonk Corporation or by Williams individually. For all of these reasons we think the petitioner has failed to establish that title was transferred to him on March 31, or on any date prior to the execution of the bill of sale on April 21.

From this fact the respondent argues that Williams, in contracting to sell the *Willmoto* on April 1, must be held to have acted as agent of the Seekonk Corporation. In this contention he relies upon *Trippett* v. *Commissioner*, 118 Fed. (2d) 764, affirming 41 B. T. A. 1254; certiorari denied, 314 U. S. 644. The decision in that case, however, was based upon the fact that the corporate assets which the stockholders had contracted to sell "had not been distributed to the stockholders when the contract of sale was entered into *or when it was consummated* * * *." As a pure proposition of law, we think it can not be said that a stockholder can in no circumstances contract as an individual to sell property which he expects to acquire from the corporation. Suppose, for example, that one of a number of stockholders independently contracts to sell the share of the corporate assets which he expects to receive the following month as a

distribution in liquidation. Is there any reason why he should be held to have acted as agent of the corporation in so contracting? Any agency relationship must find its basis in some fact other than a mere contract to sell after-acquired assets. See *Motter* v. *Patterson*, 68 Fed. (2d) 252.

The crucial question involved herein, as we see it, is whether the gain upon the sale of the *Willmoto* is taxable to the corporation by reason of the memorandum of April 2. It is clear that, where a corporation has negotiated a sale and actually entered into the contract in its own name and then at the last moment transferred the property in question to its stockholders, who consummated the transaction, the sale is that of the corporation and the stockholders are mere conduits of title. *Nace Realty Co.*, 28 B. T. A. 467; affirmed without written opinion Apr. 13, 1935 (C. C. A., 6th Cir.); *James Duggan*, 18 B. T. A. 608. The intermediate transfer is disregarded as a "formal device" unnecessary to the consummation of the transaction. *Court Holding Co.*, 2 T. C. 531. The rationale of those cases is that the stockholders taking title after the corporation has bound itself to sell the property can do nothing other than carry out the corporate obligation.

In this case, however, we have a different situation. The record, as a whole, is exceedingly clear that Williams at all times intended to make the sale to the National Gypsum Co. as an individual, for the reason that all necessary steps to dissolve the corporation had already been taken. The board of directors and the sole stockholder had adopted resolutions to dissolve on March 25, and on March 31 all documents required for the dissolution of the corporation were executed and mailed to New York to be filed with the proper authorities. Up to that time there had been no negotiations for the sale of the *Willmoto*. No sale was even contemplated. On the evening of April 1 Williams orally agreed to sell the *Willmoto* to Pillsbury & Martignoni's undisclosed principal. It is evident that he intended to act as an individual in so contracting and not as an agent of the corporation, which was already in process of dissolution. Strong testimony to this effect is buttressed by the following notation made by Williams the next morning upon the telegram received earlier from Pillsbury: "Price $655,000, net to seller George T. Williams."

From the testimony it is apparent that Seekonk was included in the memorandum of April 2 merely as an assurance to the purchasers that good title would be forthcoming from either the corporation or Williams, although Williams himself had no doubt in this matter. This is evidenced by the letter of April 3 from Graham to Boal in which the proposed transfer to National Gypsum Co. was described as a sale by Williams, individually, and by the telegram of April 4 to Boal in which Boal was instructed that the corporation was not to

be brought into the transaction at all. The formal contract of sale, executed on April 8, made no mention of Seekonk, but was the individual undertaking of Williams to sell the ship. Title was transferred from the corporation to Williams on April 21, and on May 5, Williams, pursuant to his contract of April 8, transferred title to the National Gypsum Co. The purchase price was paid by three checks made payable to Williams and deposited in his personal account. Thus, it may be said that Williams was carrying out his own primary obligation in consummating the sale. In this, we think, the case is basically distinguishable from those cases where the stockholder merely serves as a conduit in consummating the corporate obligation. The transfer to Williams was not unreal or sham, for it was a natural culmination of steps taken prior to any negotiation to sell and divorced from any purpose to sell. The reason for the rule in the cases relied upon by the respondent is absent from this record and, in our opinion, the sale must be held to be the sale of Williams, individually, and the gain thereon not income to the corporation.

The second issue has to do with the determination of the Commissioner that the net income realized from the operation of the vessel after March 31 was realized by and taxable to the Seekonk Corporation. The items of income have been specifically set forth in our findings of fact. The petitioner contends that all items of income accruing after March 31 were properly taxable to Williams, individually, for the reason that title to the ship vested in him on that date. We have found, as a fact, that title to the ship was not transferred to Williams until April 21, 1941. The items of income from the operation of the ship are, therefore, properly taxable to the corporation. There is no evidence that the "ships stores," which were sold at a somewhat later date, were in fact ever transferred to Williams prior to their sale and, consequently, the sale must be held to be the sale of the corporation through Williams as president. *Trippett* v. *Commissioner, supra.* The respondent in his determination of the deficiency has allowed the deduction by the corporation of the various items of expense set forth in our findings of fact. On this point the respondent is sustained.

*Decision will be entered under Rule 50.*