L–R HEAT TREATING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 60016, 61341. Filed July 26, 1957.

*Herbert M. Gannet, Esq.*, for the petitioner.
*Stanley W. Herzfeld, Esq.*, for the respondent.

#### OPINION.

MULRONEY, *Judge:* The respondent determined deficiencies in income and excess profits taxes as follows:

| Fiscal year<br>ended July 31 | Deficiency |
|---|---|
| 1951 _____ | $846. 73 |
| 1952 _____ | 1, 721. 08 |
| 1953 _____ | 3, 061. 16 |

Certain adjustments were uncontested and are to be considered on a Rule 50 computation.

The narrow issue for our consideration is whether certain sums paid on 14 separate loans, each being designated by petitioner as "premium for making the loan," were ordinary and necessary borrowing expenses, or were they, in reality, interest payments on borrowed capital which should be adjusted in accordance with section 433 (a) (1) (O).[1]

All the facts were stipulated and are found accordingly.

Petitioner is a New Jersey corporation. It filed timely income tax returns on the accrual basis for the fiscal year ended July 31, 1951, with the then collector of internal revenue for the fifth district of New Jersey, and timely accrual income tax returns for the fiscal years ended July 31, 1952 and 1953, with the district director of internal revenue for the same district.

In Schedule EP, attached to each of the petitioner's income tax returns for the years in issue, petitioner claimed the $25,000 minimum excess profits tax credit which the respondent allowed.

During the taxable years before us, in 14 separate transactions, petitioner borrowed various sums of money from each of the following: United Credit Corporation, Donald M. Landis, Leonard Landis, and Paul R. Bernstein. Each borrowing transaction was negotiated and executed separately but in substantially the same form.

On the occasion of each loan, petitioner's directors authorized petitioner to borrow a certain sum. The resolution also provided for a rate of interest to be paid the lender and an additional sum designated as "premium for making the loan * * * ." Petitioner then executed and delivered to the lender or lenders a series of weekly installment notes, secured by a chattel mortgage, obligating petitioner to repay the full face amount of the notes, plus 6 per cent interest. Petitioner actually received less than the total face amount of the notes and the difference between the amount actually received and the face amount of the loan, or the amount withheld from each loan, was designated as "premium for making the loan * * *."

In each of the transactions, the amount to be withheld was determined by negotiations between the petitioner and the lender or lenders. The face amounts of the loans varied from $5,000, of which $650 was withheld for a 40-week loan, to $100,000, of which $25,000 was with-

---

[1] All references to section numbers are to the Internal Revenue Code of 1939.

held for a 200-week loan. The total face amount of all the loans in question was $292,000, of which $61,200 was withheld as premium for making loan. This was in addition to the 6 per cent which was designated as interest.

Legal expenses, including searches and filing fees, were also paid by petitioner with respect to all of the transactions.

During the taxable years involved, two separate ledger accounts were maintained in petitioner's books and records entitled "interest on borrowed capital" and "finance charges and other costs." The amounts withheld were entered as a charge in the account entitled "finance charges and other costs," and the 6 per cent interest on the loans was entered in the interest account.

In computing its excess profits net income for the taxable years involved, petitioner did not make any adjustment under section 433 (a) (1) (N) or (a) (1) (O) for any portion of the amounts designated as "premium for making loan," contending that such amounts were ordinary and necessary business expenses and not interest. Respondent determined that such amounts constitute interest on borrowed capital and made adjustments therefor to excess profits net income under the provisions of section 433 (a) (1) (O). We hold that the determination of the respondent was correct.

The petitioner stipulated that if we find that the amounts designated as "premiums for the loan" constitute interest, the adjustments set forth in the statutory notices are correct. Therefore, our only task is to determine this narrow issue. Petitioner admits that the term "interest" as used in section 433 (a) (1) (O) should be accorded the same meaning as is given the term under section 23 (b).

Interest has been defined as an "amount which one has contracted to pay for the use of borrowed money," *Old Colony R. Co.* v. *Commissioner*, 284 U. S. 552; or "compensation for the use or forbearance of money," *Deputy* v. *DuPont*, 308 U. S. 488. These cases pointed out that Congress intended that the word be accorded the usual, ordinary, and everyday meaning in the affairs of business.

We had almost identical facts before us concerning one of the issues in *Court Holding Co.*, 2 T. C. 531, reversed on another issue 143 F. 2d 823, reversed 324 U. S. 331. The issue about which we are interested was not the subject of appeal. There the taxpayer executed and delivered three notes to one Regina Feiwish as evidence of a cash loan made by her to the taxpayer. The notes were in the total sum of $3,000 and upon receipt of the proceeds of the loan, the taxpayer paid a cash bonus of $350 to Regina Feiwish in consideration of her making the loan. We held (2 T. C. at 536):

In our opinion the amount in question constituted interest paid on an indebtedness of the petitioner, and is deductible. It is true that the promissory notes

representing the Feiwish loan were made by Louis Miller, individually, but it is not disputed that the loan was made to the petitioner or that it was repaid by the petitioner. That payment of the indebtedness of another was made by the petitioner as a volunteer can not be assumed. The evidence shows also that the $350 was paid as compensation for the use of borrowed money, although denominated as rent discount. It falls within the ordinary and accepted definition of "interest," and it is in the ordinary and accepted sense that that term is used in the revenue acts. *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552.

The instant case is ruled by our holding above. Here it is admitted there was a negotiated bonus or premium to be paid the lender as a prerequisite to obtaining borrowed capital. The fact that here the amount of the bonus or premium was withheld by the lender, and in the above-cited case the bonus was paid back to the lender, is immaterial. Petitioner's counsel admits the withholding was done here "instead of exchanging checks." The fact that the parties did not call the premium or bonus interest and that the petitioner did not treat the bonus or premium on its books as interest is likewise immaterial.

We have held that it matters little what such an expenditure is termed, as the facts control and not the terminology. *Central Station Signals, Inc.*, 10 T. C. 1015. We held in *United States Playing Card Co.*, 15 B. T. A. 975, 981, that a so-called commission was interest, saying "it is a well established principle of law that the name by which an instrument or transaction is denominated is not controlling in determining its true character."

The other arguments advanced by the petitioner are likewise without merit. We cannot see how the fact that the same rates of so-called premium were not charged for each loan can alter the character of the payment. Interest rates always vary with demand and supply and are often set by negotiation between the parties. The fact that the so-called premium was withheld or prepaid in a lump sum similarly does not alter the nature of the payment. *Court Holding Co., supra.*

We are convinced that the only reason petitioner contracted to pay a premium or bonus to the lender was for the use of borrowed capital. The petitioner, in fact, admits this by stating that the premium was demanded and paid solely as a prerequisite to obtaining the necessary funds to finance its business operations. It is not even contended that the sum was paid or withheld as consideration for handling charges, commissions for selling the notes, or any other services rendered. We hold for the respondent.

*Decisions will be entered under Rule 50.*