HAROLD W. WALES and DOROTHY K. WALES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wales v. Commissioner
Docket No. 1103-76.
United States Tax Court
T.C. Memo 1978-125; 1978 Tax Ct. Memo LEXIS 384; 37 T.C.M. (CCH) 550; T.C.M. (RIA) 78125; March 30, 1978, Filed *384 In 1968, P's parents transferred $4,000 to him, and he promised to repay them $8,000 in the future. During 1971 and 1972, P paid his mother approximately $5,000. In Jan. 1973, P's mother transferred to him an additional $5,000, and in that year, he paid her approximately $3,500. Held, P is not entitled to deduct as interest under sec. 163(a), I.R.C. 1954, any part of the payments to his mother. Leslie A. Plattner, for the petitioners. Milton J. Carter, Jr., for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, *385 Judge: The Commissioner determined deficiencies in the petitioners' Federal income tax of $1,150.00 for 1972 and $1,121.00 for 1973. The issue for decision is whether certain payments in 1972 and in 1973 by the petitioner Harold W. Wales to his mother are deductible as interest on indebtedness within the meaning of section 163(a) of the Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Harold W. Wales and Dorothy K. Wales, husband and wife, resided at Phoenix, Ariz., at the time they filed their petition in this case. They filed their joint Federal income tax returns for 1972 and 1973 with the District Director of Internal Revenue at Phoenix, Ariz. Mr. Wales will sometimes be referred to as the petitioner. On or about August 15, 1968, the petitioner's parents trasferred $4,000 (1968 arrangement) to him with the understanding that he would repay them $8,000 in the future. The petitioner and his parents did not agree to any specific interest rate; *386 nor did they agree to a specific date for the repayment of such funds, rather, the petitioner was expected to repay the $8,000 when he could afford to or when he received certain fees from Crescent City Development Co. (Crescent City). The petitioner anticipated repaying his parents with funds owed to him from Crescent City, which was involved in the development of a residential subdivision in northern California. The petitioner, in conjunction with other attorneys, performed legal services for Crescent City in exchange for a percentage of the profits from the venture. Originally, he had anticipated receiving such fees as early as 1965. However, due to cash-flow problems, payment had been put "off and off and off." On January 1, 1973, the petitioner's mother transferred $5,000 to the petitioner (1973 arrangement). No instrument was executed in connection with such arrangement. The petitioner and his mother had no agreement as to when the funds should be repaid, nor as to the method of repaying such funds, although his mother had indicated that she would need $200 a month to supplement her income. From 1974 to the time of trial, the petitioner's mother transferred additional *387 funds to him on two separate occasions. Beginning in July 1971, the petitioner received monthly payments from Crescent City as compensation for his legal services. He received $3,600 in 1971, $15,600 in 1972, and $7,200 in 1973. In 1971, the petitioner began making payments to his mother. [2] As of December 31, 1971, he had paid her slightly in excess of $1,200. During 1972, he made 12 monthly payments to her, totaling $3,809.24; each payment was $300.77, except that the payment in May was $500.77. During 1973, he also made 12 monthly payments to his mother, totaling $3,508.47; again each payment was $300.77, except that the payment in December was $200.00. In the years after 1973, the petitioner made monthly payments of $200.00 to his mother. For his own records, the petitioner divided each monthly payment during 1972 and 1973 into interest and principal. The part of each payment characterized *388 as interest was made up of two components: First, he computed interest at the yearly rate of 10 percent on the unpaid balance of his obligations. [3] Thus, for 1972, each month he multiplied the unpaid balance of the 1968 arrangement by.008333 to calculate the monthly equivalent of 10-percent interest a year on such obligation. In 1973, each month he made the same computation on the unpaid balance of the 1968 arrangement and on the entire 1973 arrangement, since, according to his calculations, no part of the principal of the latter arrangement was repaid during 1973. By subtracting the monthly interest as so determined from each monthly payment, he computed the amount by which the outstanding principal of the 1968 arrangement was reduced each month. Second, because he considered the amount of the 1968 arrangement in excess of the $4,000 actually transferred to him by his mother to be interest, he treated $4,000 of the $8,000 1968 arrangement as interest. Accordingly, one-half of the portion of each monthly payment which reduced the outstanding principal of the 1968 arrangement was also characterized as interest. Based on the petitoner's calculations, the percentage of each monthly *389 payment during 1972 characterized as interest gradually decreased from 59 percent in January to 55 percent in December. From January 1973 to November 1973, such percentage gradually decreased from 62 percent to 58 percent. Interest represented 62 percent of the December 1973 payment. On the average, he characterized as interest 59 percent of his payments to his mother during 1972 and 1973. Prior to November 1959, the petitioner was employed as a revenue agent with the Internal Revenue Service. Thereafter, he commenced the practice of law, and by 1968, his practice was limited primarily to tax matters, including estate planning. The petitioner and his wife had gross income of $85,237.50 in 1972 and $127,180.00 in 1973. During 1968, but prior to August 15, 1968, the petitioner drafted wills for his parents. At that time, his mother and father were 65 and 67 years of age, respectively. *390 Their income during 1968 was approximately $6,000 and consisted primarily of his father's salary as the manager of a liquor store in Ellensburg, Wash. They had total savings of approximately $6,000 just prior to August 15, 1968. Sometime prior to 1972, the petitioner's father died. During 1972 and 1973, his mother's income, which amounted to $500 or $600 a month, consisted of social security benefits, a pension based on his father's services, and the monthly payments from the petitioner. In his Federal income tax returns, the petitioner deducted $2,168.66 for 1972 and $2,114.76 for 1973 as interest paid to his mother on indebtedness. In his notice of deficiency, the Commissioner disallowed such deductions because the petitioner did not establish that any portion of the payments to his mother constituted interest on a bona fide indebtedness. OPINION At the commencement of the trial in this case, the petitioner moved, under the authority of Helvering v. Taylor,293 U.S. 507 (1935), that the burden be shifted to the Commissioner to prove the correctness of his deficiency determination. In support of his motion, he contends that the deficiency determination *391 was arbitrary and capricious because the Commissioner failed to deny that his mother transferred funds to him which he subsequently repaid, and because the Commissioner failed to state in the deficiency notice how such transactions should be characterized. We find no merit in such contention. In this case, funds were transferred between family members at an alleged interest rate which was astronomical under the circumstances. The Commissioner was not persuaded that such transfers created an indebtedness or that any portion of the repayment constituted interest within the meaning of section 163(a).Accordingly, he issued a deficiency notice informing the petitioner that a deficiency had been determined, why it had been determined, and the amount thereof. Where a taxpayer claims a deduction, he ordinarily bears the burden of proving he is entitled to such deduction ( Rockwell v. Commissioner,512 F. 2d 882 (9th Cir. 1975), affg. a Memorandum Opinion of this Court, cert. denied 423 U.S. 1015 (1975); Chaum v. Commissioner,69 T.C. 156 (1977)), and we cannot say it was arbitrary or capricious for the Commissioner to require the petitioner *392 to meet such burden in this case. Moreover, the fact that the Commissioner did not include in the deficiency notice the information desired by the petitioner is no basis for concluding that an otherwise reasonable deficiency determination was arbitrary or capricious. The Commissioner was under no obligation to characterize in the deficiency notice the various transactions relied upon by the petitioner in claiming the deduction. See Nor-Cal Adjusters v. Commissioner,503 F. 2d 359 (9th Cir. 1974), affg. a Memorandum Opinion of this Court; Mayerson v. Commissioner,47 T.C. 340, 348-349 (1966); Standard Oil Co. v. Commissioner,43 B.T.A. 973, 998 (1941), affd. 129 F. 2d 363 (7th Cir. 1942), cert. denied 317 U.S. 688 (1942); Carnrick v. Commissioner,21 B.T.A. 12, 21 (1930). Consequently, we reject the petitioner's motion to shift the burden of proof. Another preliminary matter involves the petitioner's argument that the only issue raised by the deficiency notice, the pleadings, and the trial was whether he owed a legally enforceable debt. In his reply brief, he asserts that the Commissioner *393 raised a new issue in his brief when he contended that no part of the payments by the petitioner constituted interest because, as interest, they would be unreasonable in amount. However, the record does not support the petitioner's argument. The issue of whether any part of the payments by the petitioner to his mother constituted interest was first raised in the deficiency notice, which, in relevant part, provided: The deductions of $2,169.00 for 1972 and $2,115.00 for 1973 claimed for interest payments made to Clara A. Wales, your mother, are not allowed because it has not been established that such payments represented interest paid on a bona fide indebtedness. The petitioner expressly recognized the issue in the allegations of error in the petition which provided, interalia: 4. The determination of taxes as set forth in the Notice of Deficiency is based upon the following errors: (a) Respondent erred in his determination that Petitioners did not pay interest during the years 1972 and 1973 to Clara A. Wales. In his answer, the Commissioner specifically denied such allegation. In addition, both parties recognized the issue in their opening statements at the *394 trial. Accordingly, we hold that the issue of whether certain payments made by the petitioner to his mother constituted interest independently of the validity of the underlying indebtedness was timely raised by the Commissioner (see Nor-Cal Adjusters v. Commissioner,503 F. 2d at 361-362), and he is free to argue, based on the magnitude of such payments, that they constituted something other than interest. See Estate of Scharf v. Commissioner,38 T.C. 15, 27-28 (1962), affd. 316 F. 2d 625 (7th Cir. 1963); Sorin v. Commissioner,29 T.C. 959, 969 (1958), affd. per curiam 271 F. 2d 741 (2d Cir. 1959); Standard Oil Co. v. Commissioner,43 B.T.A. at 998-999. having disposed of those preliminary matters, we now reach the substantive issue of whether any part of the payments by the petitioner to his mother did in fact constitute interest within the meaning of section 163(a), which allows a deduction for "interest paid or accrued within the taxable year on indebtedness." Interest is defined as compensation for the use or forebearance of money. Deputy v. Dupont,308 U.S. 488 (1940); *395 Golsen v. Commissioner,54 T.C. 742, 753 (1970), affd. 445 F. 2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971); Williams v. Commissioner,47 T.C. 689, 692 (1967), affd. 409 F. 2d 1361 (6th Cir. 1968), cert. denied 394 U.S. 997 (1969); Cooper Agency v. Commissioner,33 T.C. 709, 715 (1960), affd. per curiam sub nom. Estate of Cooper v. Commissioner,291 F. 2d 831 (4th Cir. 1961). Indebtedness is defined as an unconditional and legally enforceable obligation for the payment of money. Autenreith v. Commissioner,115 F. 2d 856, 858 (3d Cir. 1940), affg. 41 B.T.A. 319 (1940); Kovtun v. Commissioner,54 T.C. 331, 338 (1970), affd. per curiam 448 F. 2d 1268 (9th Cir. 1971), cert. denied 405 U.S. 1016 (1972). Where, as here, the transactions giving rise to the claimed interest deduction are between family members, the evidence presented by the petitioner must be rigorously examined to be sure that there was an indebtedness and that the amount repaid in excess of the alleged indebtedness *396 represented the agreed-upon price for the use or forebearance of money. Woodward v. United States,208 F. 2d 893 (8th Cir. 1953); Cooper Agency v. Commissioner,supra;Mercil v. Commissioner,24 T.C. 1150 (1955); cf. Rude v. Commissioner,48 T.C. 165, 172 (1967). Even if the form of the transactions is able to withstand such rigid scrutiny, we must nevertheless examine the substance of the transactions to ascertain whether it coincides with the form. Woodward v. United States,supra;Golsen v. Commissioner,supra; 1432 Broadway Corp. v. Commissioner,4 T.C. 1158 (1945), affd. 160 F. 2d 885 (2d Cir. 1947). This process requires us to bypass the formal indicia of indebtedness which a "lawyer's ingenuity has devised" (1432 Broadway Corp. v. Commissioner,supra at 1165) and focus our inquiry on whether the petitioner engaged in purposive economic activity during the course of incurring the alleged indebtedness and paying the alleged interest, or whether the petitioner's motivation was to disguise the true nature of the *397 transactions for the purpose of claiming an interest deduction which otherwise would not be available. Knetsch v. United States,364 U.S. 361 (1960); Salley v. Commissioner,464 F. 2d 479 (5th Cir. 1972), affg. 55 T.C. 896 (1971); Goldstein v. Commissioner,364 F. 2d 734 (2d Cir. 1966), affg. 44 T.C. 284 (1965), cert. denied 385 U.S. 1005 (1967); Woodward v. United States,supra.Our inquiry is purely a factual one, and the petitioner bears the burden of proving he is entitled to the interest deduction. Woodward v. United States,supra at 897; Rule 142, Tax Court Rules of Practice and Procedure. Based on the entire record, we hold that he has failed to carry such burden. In connection with the 1968 arrangement, the interest deducted by the petitioner was made up of two components: He claimed that a part of the payments represented 10-percent interest on an obligation to his mother, and he also claimed that since he was obligated to repay her $4,000 more than she had advanced to him, the excess $4,000 represented additional interest. As to the first *398 interest component, the petitioner failed to prove that he and his mother agreed that the $8,000 obligation would bear interest at the rate of 10 percent. The petitioner's only witness at trial, his mother, did not mention that her son was obligated to pay 10-percent interest on the $8,000 obligation; rather, when she testified as to the terms of the agreement, she simply stated that she had transferred $4,000 to her son, and he had promised to pay her $8,000 in the future. She could not recall having agreed upon an interest rate, and she had no idea whether her son in fact paid her any interest in connection with the 1968 arrangement. Certainly, his mother, as the lender, would have been aware if an interest rate had been agreed upon and interest had in fact been paid. The petitioner urges us to fill the void left by his mother's testimony by accepting the terms stated in an instrument titled "promissory note" as evidence of the agreed-upon interest rate. However, we are not persuaded that the petitioner's mother ever acquired an enforceable interest in the so-called promissory note. There was no evidence that the petitioner delivered the note to his mother or that she ever *399 possessed it. See Ariz. Rev. Stat. secs. 44-2208 (5), (20), 44-2504, 44-2523, 44-2524, 44-2531; Babbitt Bros. Trading Co. v. First Nat. Bank,32 Ariz. 588, 261 P. 45 (1927); Sherman v. Goodwin,11 Ariz. 141, 89 P. 517 (1907), revd. on other grounds 12 Ariz. 42, 95 P. 121 (1908); see also Rex Smith Propane, Inc. v. National Bank of Commerce,372 F. Supp. 499 (N.D. Tex. 1974). His mother did not seem to be aware that a note even existed, and the petitioner never claimed that he gave it to her. Furthermore, the discrepancies between his mother's testimony and the terms of the so-called note convinces us that his mother never possessed the instrument, and that it did not accurately reflect the terms of their agreement. First, notwithstanding the maturity date stated in the note, the petitioner's mother testified that she and her son had not agreed upon a specific maturity date; rather, it was her understanding that her son agreed to pay her back when he could afford to or when he received certain fees from Crescent City. Second, she testified that her son agreed to repay her whether or not he ever received the legal *400 fees from Crescent City, whereas the note stated "that the amount payable hereunder shall be payable from fees received by the maker hereof from Crescent City" (emphasis supplied). Finally, the petitioner's mother was not aware that the 1968 obligation was to bear interest at the rate of 10 percent after maturity, notwithstanding the express terms of the note to that effect. Certainly, if she had received the note and it had accurately reflected the terms of their agreement, such inconsistencies would not exist. As to the second interest component of the 1968 arrangement, there was no evidence that the petitioner and his mother agreed that the $4,000 to be paid to her in excess of the $4,000 she transferred to him was interest. His mother did not consider such increase to be interest, and it was not so characterized even by the so-called note. The petitioner relies upon the alleged fact that he agreed to pay his mother $4,000 for the use of $4,000 from August 15, 1968, until June 15, 1971, the maturity date set forth in the so-called note. However, as indicated previously, we are not persuaded that the note accurately reflected the terms of the agreement or that any specific *401 maturity date had been agreed upon. Aside from the failure to label the increase in indebtedness as interest, it does not appear that such increase was in fact payment for the use or forebearance of money. In some cases, it has been held that payments which were in addition to the stated interest and were in the nature of bonuses were deductible as interest. See Wiggin Terminals, Inc. v. United States,36 F. 2d 893 (1st Cir. 1929); L-R Heat Treating Co. v. Commissioner,28 T.C. 894 (1957); Court Holding Co. v. Commissioner,2 T.C. 531, 536 (1943), revd. on other grounds 143 F. 2d 823 (5th Cir. 1944), revd. 324 U.S. 331 (1945); see generally Enoch v. Commissioner,57 T.C. 781, 795 (1972). However, in those case, the parties were dealing at arm's length, and it was clear that the bonuses were paid to induce the loans. Here, the arrangement was not negotiated at arm's length between strangers, and there is no evidence that the bonus did in fact induce the loan. On the contrary, the petitioner merely agreed to pay his mother $8,000 at some time in the future, and she transferred $4,000 *402 to him. When they entered such agreement in 1968, there was no ascertainable correlation between the amount of the increase in indebtedness and the length of time the petitioner had use of his mother's money, and the fact that he commenced making payments to his mother in 1971 does not retroactively alter such agreement. Under the agreement, the petitioner could have paid his mother the entire $8,000 6 months after he received it, and in that event, it would have been clear that the increase was not paid for the use or forebearance of money. It is equally clear that whenever the petitioner paid the $8,000 to his mother, the increase was not paid as interest. The facts that in 1968 his father's retirement was likely and that his parents' income and resources were modest suggest that the petitioner agreed to pay them $8,000 after they transferred $4,000 to him because of his desire to supplement their income. Though we commend him for his generosity, he cannot, by labels, convert the increase in indebtedness into deductible interest. With regard to the 1973 arrangement, the petitioner failed to prove that he incurred a legally enforceable obligation to repay the $5,000. There *403 was no evidence of an obligation on the petitioner's part to pay his mother such amount. Moreover, there was no evidence, either written or oral, of the essential terms of the agreement. For example, there was no proof that the petitioner and his mother had agreed upon a reasonably definite and determinable maturity date for the obligation, and there was no evidence of an agreed-upon method of repayment. See United States v. Virgin,230 F. 2d 880 (5th Cir. 1956); cf. Zimmerman v. United States,318 F. 2d 611 (9th Cir. 1963). The petitioner's mother did testify that she asked her son to supplement her income by $200 a month, and he did in fact make such monthly payments to her. However, we do not consider those payments as being the agreed-upon method of repaying the 1973 arrangement, and neither did the petitioner. According to his own testimony, none of themonthly payments to his mother during 1973 constituted repayment of the principal of the 1973 obligation. Apart from the petitioner's failure to comply with the technical niceties of section 163(a), there is an even more pervasive reason for disallowing the interest deductions. Viewing *404 the series of transactions between the petitioner and his mother holistically, it is quite evident that the petitioner was not engaged in bona fide economic activity; rather, it appears that he undertook to fulfill a moral obligation to support his parents in their retirement years and to claim an interest deduction for doing so. He carefully structured the transactions as loans calling for the repayment of principal and interest, but the timing of the payments was left flexible so that they could be made when his parents needed the additional income and when the petitioner's income was augmented.
The record is replete with evidence supporting such a scenario. The petitioner is an attorney who specializes in tax matters, including estate planning. In 1968, when his mother was 65 and his father was 67, he drafted their wills. He was aware that his parents' yearly income was approximately $6,000 and that their total savings were slightly in excess of $6,000. In addition, it was quite apparent that his father was approaching retirement, and that after his father retired, his parents' total monthly income would be reduced to $200 to $300. With such information in mind, the petitioner *405 apparently determined to make sure his parents were adequately provided for in their retirement years. Accordingly, in 1968, he "borrowed" $4,000 from his parents and promised to pay them $8,000 in the future. In 1971, he started repaying such obligation, and when he had paid his mother approximately $5,000, he "borrowed" an additional $5,000 in January 1973. This process of exchanging funds with his mother continued after 1973. From 1974 to the time of trial, the petitioner "borrowed" money from his mother on two separate occasions. Though we do not know how much he borrowed, we wonder whether such transactions were similar to the 1968 arrangement, and whether there was a continuing correlation between the amount he paid his mother and the amount he would subsequently borrow from her. In addition, the amount of the monthly payments indicates that the arrangements were not based on economic considerations. During 1972 and 1973, the monthly payments were generally about $300. When such monthly payments are added to his mother's other retirement income, it is obvious that the yearly totals for 1972 and 1973 at least equal his parents' income in 1968. The coincidences in *406 the timing of the repayment of the obligations are also probative of the absence of bona fide economic activity. The failure to establish a definite and certain maturity date for the obligations gave the petitioner the flexibility he needed to time repayment to accomplish several objectives.He could defer repayment of the obligations until his father retired and his parents would have the greatest need for the additional income. Even the so-called promissory note which established June 15, 1971, as the maturity date for the 1968 obligation supports the inference that the petitioner tied repayment to his father's retirement, since his father would have been 70 years old and presumably retired by then.At the same time, the petitioner could time the repayment so that it would coincide with the receipt of substantial income from Crescent City. During the same period he was making payments to his mother, he received payments from Crescent City totaling $3,600 in 1971, $15,600 in 1972, and $7,200 in 1973. Finally, the percentage of the support payments characterized as interest by the petitioner was astronomical. On a monthly basis, the amount claimed to be interest in 1972 gradually *407 decreased from 59 percent of the January payment to 55 percent of the December payment. The effect of "borrowing" an additional $5,000 in 1973 was to increase the percentage of the 1973 payments characterized as interest. Such percentage decreased from 62 percent in January to 58 percent in November. In December 1973, he decreased the monthly payment to $200, thereby increasing to 62 percent the interest portion of such payment. Against this background, the petitioner urges us to ignore all of these coincidences and find that he engaged in bona fide economic activity. However, the evidence does not warrant such conclusion. We have no clue as to why he needed the money or how he eventually used it. Though he made some vague references about needing money in 1968 to invest in Medi-Fund, we do not know whether he actually invested in such company. Moreover, he offered no explanation for why he needed to "borrow" $5,000 from his mother in 1973. Indeed, keeping in mind that he had income in excess of $127,000 in 1973, it is not surprising that his mother testified that she did not think he needed the money. Similarly, as to the post-1973 transactions, we were not informed why *408 he needed to "borrow" money or how he used it. The petitioner had ample opportunity to explain the economic activity he planned which justified his "borrowing" money at an extremely high interest rate. Instead, he chose to rely on the formal indicia of indebtedness which, because of his careless manner of handling the transactions and because of his inability to satisfactorily establish the terms of such transactions, only lends support to our conclusion. After an exhaustive analysis of all the surrounding facts and circumstances, we are convinced that the only substance to the elaborate scheme devised by the petitioner was to convert to interest approximately 59 percent of his monthly support payments to his mother. As stated by the Supreme Court in Knetsch v. United States,364 U.S. at 365: "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. * * * But the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended." In this case, it is clear to us that there was no interest paid *409 within the meaning of section 163(a). Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. It is not entirely clear from the evidence whether the petitioner made the 1971 payments to his mother or father. However, both parties appear to assume that all payments were made to or for the benefit of the petitioner's mother, so we will make the same assumption.↩
3. The parties have referred to the 1968 and 1973 arrangements as creating obligations or as obligating the petitioner, and for convenience we have at times used the same or similar terminology, although by doing so, we do not mean to indicate that the arrangements did in fact create obligations.↩